SECOND DIVISION

JUNE 22, 2004

No. 1-03-0031

WILLIAM R. RAMETTE, Individually ) Appeal from the

and on Behalf of All Others Similarly ) Circuit Court of

Situated, ) Cook County.

) 

Plaintiff-Appellant, ) 

) No.
 01 CH 17702

v. ) 

) 

AT&T Corporation, ) The Honorable

) Stephen A. Schiller,

Defendant-Appellee. ) Judge Presiding.

JUSTICE GARCIA delivered the opinion of the court:

William Ramette filed a class action lawsuit against AT&T based on AT&T's decision to charge its customers $1.50 per month to continue receiving their long-distance telephone bills with their local service telephone bills.  Ramette alleged that the fee was imposed without any disclosure from AT&T that it would send a separate long-distance bill at no charge.  The imposition of this fee closely coincided with the first-ever contract between AT&T and its customers, the "Consumer Services Agreement" (CSA).  Previously, the relationship between AT&T and its customers was governed by tariffs filed with the Federal Communications Commission (FCC). 

AT&T moved to compel arbitration of the claims pursuant to the CSA's arbitration provision.  Ramette argued that the legal remedies provisions of the CSA, including the arbitration provision, were unconscionable under Illinois law.  The circuit court granted AT&T's motion to compel arbitration, finding that the Federal Communications Act (47 U.S.C. §203 (2000)) preempts all state-law challenges to the enforcement of the arbitration clause.  The circuit court also found the CSA was not unconscionable as a matter of law.  Ramette filed an interlocutory appeal on December 23, 2002, pursuant to Supreme Court Rule 307 (188 Ill. 2d R. 307). 

BACKGROUND

Prior to 1996, pursuant to the Federal Communications Act (FCA), the FCC 
required long-distance providers to file tariffs detailing the terms and cost of telephone service (47 U.S.C. 

§203 (2000)).  The tariffs then governed the relationship between the telephone service provider and its customers.  Under the "filed tariff doctrine," customers were bound by the terms of the tariff even if they had never seen the tariff, and even if the customer had been promised services with different rates, terms, or conditions.  
Boomer v. AT&T Corp.
, 309 F.3d 404, 408 (7th

Cir. 2002).  Customers were bound by the rates, terms and conditions contained in the tariff unless the FCC determined the tariff violated the FCA.  
Boomer
, 309 F.3d at 408.  

The Telecommunications Act of 1996 amended the FCA.  The amendment expressly granted the FCC the authority to forbear from applying the tariff-filing requirement.  The Telecommunications Act of 1996 allowed the FCC to exempt carriers from the tariffing requirements (47 U.S.C. §160(a) (2000)).  Accordingly, the FCC ordered mandatory detariffing.  Detariffing meant that the rates, terms, and conditions of long-distance service would be governed by individual contracts between the service provider and the customer, rather than through tariffs filed with the FCC.  The carriers were required to provide customers with notice of the rates, terms, and conditions of service, and to offer customers service under such terms and conditions.  
Boomer
, 309 F.3d at 409.  The customers in turn could accept or reject the carrier's offer.  
Boomer
, 309 F.3d at 409.  
As a result, AT&T entered directly into contracts with each of its customers.

In May 2001, AT&T began mailing the CSA to its customers.  AT&T mailed each customer three documents: the CSA, a letter explaining the reasons the CSA was being sent, and a list of anticipated frequently asked questions with explanatory responses (collectively CSA Mailing).  The CSA Mailing was sent to Ramette in June 2001, in an envelope that was separate from his monthly bill.  On the outside of the envelope was typed: "
ATTENTION
: Important information concerning your AT&T service enclosed."  

The cover letter and sheet of frequently asked questions specifically highlighted that the CSA contained a mandatory arbitration provision.  The cover letter explained to customers that the CSA contained "[a] new binding arbitration process which uses an objective third party rather than a jury for resolving any disputes that may arise."  The cover letter also informed customers that their AT&T service or billing would not change.  The CSA Mailing provided a method for customers to reject the terms offered by AT&T.  The customer was provided a toll-free number to call to cancel his AT&T services.  The CSA Mailing informed customers that they would accept the terms of the CSA agreement by continuing to use AT&T services.  

The CSA included a section entitled "Legal Remedies Provisions."  Section 7 of the CSA mandated binding arbitration and bans all class-wide dispute resolution.  This section began in bold and capitalized text: "
IT IS IMPORTANT THAT YOU READ THIS ENTIRE SECTION CAREFULLY.  THIS SECTION PROVIDES FOR RESOLUTION OF DISPUTES THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH CLASS ACTION.  YOU CONTINUE TO HAVE CERTAIN RIGHTS TO OBTAIN RELIEF FROM A FEDERAL OR STATE REGULATORY AGENCY.
"  Following this bold language, the agreement explained that all disputes must be resolved by arbitration, unless the consumer chooses to bring an eligible dispute in small claims court or before a regulatory body, like the FCC.

In 2001, AT&T also sent Ramette and other customers a letter informing them of billing options.  The letter explained that customers could continue to receive their long-distance bill with their local service bill at a cost of $1.50 per month, or the customer could elect to receive his or her bill on the Internet at no charge.  This letter did not inform customers that AT&T would mail a separate bill at no charge.  The additional-charge alternative was the default option, and AT&T began charging Ramette $1.50 each month as a "Bill Statement Fee."  

Ramette did not contact AT&T to cancel his services.  
Instead, Ramette filed a class action complaint for restitution and damages under common law and the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et
 
seq
. (West 2000)).  AT&T moved to stay the action and compel arbitration on a nonclass basis.  Ramette argued that enforcement of the CSA's legal remedies provision would leave him without a forum for his claims and that this rendered the arbitration clause unconscionable and unenforceable.

Shortly before oral argument on the motion to compel arbitration, the Seventh Circuit decided 
Boomer
, 309 F.3d 404. 
  Accordingly, the circuit court limited oral argument: "The real focus is the applicability of the 
Boomer
 case and even if it does apply, whether I am compelled to follow it."  The circuit court decided to follow 
Boomer
, finding that the FCA preempts all state-law challenges to the enforcement of the arbitration clause.  Ramette filed an interlocutory appeal on December 23, 2002, pursuant to Supreme Court Rule 307 (188 Ill. 2d R. 307).

On appeal, Ramette argues that the circuit court erred in granting AT&T's motion to compel arbitration.    
  

ANALYSIS

I.  The Federal Communications Act and Preemption

Pursuant to the supremacy clause of the United States Constitution, federal law can preempt state laws that interfere with or are contrary to federal law.  U.S. Const., art. VI, cl. 2.  
Congress' purpose "'is the ultimate touchstone' of preemption analysis."  
Cipollone v. Liggett Group, Inc.
, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 
422, 112 S. Ct. 2608, 2617 (1992), quoting 
Malone v. White Motor Corp.
, 435 U.S. 497, 504, 55 L. Ed. 2d 443, 450, 98 S. Ct. 1185, 1189
 (1978).  "Congress' intent to preempt State law may be manifested 'by express provision, by implication, or by a conflict between federal and state law.'" 
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 335, 662 N.E.2d 397 (1996), quoting 
New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.
, 514 U.S. 645, 654, 131 L. Ed. 2d 695, 704, 115 S. Ct. 1671, 1676 
(1995). 

The principal issue, that of preemption, is a question of law, which is reviewed 
de
 
novo
.  
Cress v. Recreation Services, Inc.
, 341 Ill. App. 3d 149, 173, 795 N.E.2d 817 (2003); 
Kernats v. Smith Industries Medical Systems, Inc.
, 283 Ill. App. 3d 455, 458-59, 669 N.E.2d 1300 (1996), 
overruled on other grounds
, 
Weiland v. Telectronics Pacing Systems, Inc.
, 188 Ill. 2d 415, 721 N.E.2d 1149 (1999)
.

Both the Seventh Circuit and the Ninth Circuit have addressed the relationship between the FCA and the exact CSA arbitration provision at issue in the instant case.  The main contention between the parties is which decision should be followed.  In 
Boomer
, 309 F.3d at 423, the Seventh Circuit held that the FCA preempts all state-law challenges to the enforcement of the AT&T arbitration clause.  In 
Ting v. AT&T
, 319 F.3d 1126 (9th Cir. 2003), the Ninth Circuit held that the FCA does not preempt state-law challenges to the enforcement of the AT&T arbitration clause.  Both courts referred to section 201(b) and section 202(a) of the FCA in reaching the decision.  The Seventh Circuit found the two sections read together provide a congressional intent that all customers receive uniform rates, terms, and conditions of service.  
Boomer
, 309 F.3d at 418.  The Ninth Circuit found the two sections do not contain preemptive text.  
Ting
, 319 F.3d at 1137. 

Section 201(b) of the FCA provides: 

"All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful."  47 U.S.C. §201(b) (2000).   

Section 202(a) provides: 

"It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or service for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference of advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage."  47 U.S.C. §
202(a) (2000).

 
 In 
Boomer
, a class action suit was filed against AT&T, alleging that it overcharged customers for contributions to federal universal service funds.  
Boomer
, 309 F.3d at 408.  AT&T moved to compel arbitration and to stay or dismiss the action, arguing that after the FCC discontinued the filing of tariffs, AT&T had entered into a CSA with Boomer which prohibited class actions and mandated arbitration.  
Boomer
, 309 F.3d at 408.  Boomer sought declaratory judgment on the grounds that the arbitration clause in AT&T's CSA was unconscionable under Illinois law.  
Boomer
, 309 F.3d at 408.  The district court denied AT&T's motion to compel arbitration, and AT&T appealed, arguing that a state-law challenge to the terms and conditions of the CSA was preempted by the FCA, and Boomer was bound by the CSA's arbitration clause.  
Boomer
, 309 F.3d at 408.

The Seventh Circuit considered whether Boomer's state-law challenges to the validity of the arbitration clause were preempted by the FCA.  
Boomer
, 309 F.3d at 417.  The Seventh Circuit found that the FCA preempts state-law challenges to the validity of AT&T's arbitration clause.  
Boomer
, 309 F.3d at 418.  The court cited three main reasons for its decision.  
Boomer
, 309 F.3d at 418.  First, the court reasoned: "Sections 201 and 202, read together, demonstrate a congressional intent that individual long-distance customers throughout the United States receive uniform rates, terms and conditions of service. [Citations.]  Yet, a state law challenge to the validity of the terms and conditions of a telephone service agreement would result in the application of fifty bodies of law, and this would inevitably lead customers in different states receiving different terms and conditions."  
Boomer
, 309 F.3d at 418.  

Second, the Seventh Circuit found: "[A] state law challenge to an arbitration clause (or for that matter a provision prohibiting class actions) not only affects the uniformity of that term, but it also threatens to destroy the consistency of rates offered consumers throughout the United States.  As we recognized in [
Metro East Center for Conditioning & Health v. Qwest Communications International, Inc.
, 294 F.3d 924 (7th Cir. 2002)], arbitration offers cost-saving benefits to telecommunication providers and 'these benefits are reflected in a lower cost of doing business that in competition are passed along to customers.' [
Metro East
, 294 F.3d at 927].  However, if in some states arbitration clauses are stricken as unconscionable or illegal under various states' consumer protection laws, whereas in other states such provisions are validated, the overall cost savings will be reduced."  
Boomer
, 309 F.3d at 419.  Furthermore, the court found that "if AT&T charges its customers the same rate, but provides different terms and conditions for service, that too is a form of 'discrimination in charges.'  Accordingly, even if AT&T leaves its rates the same (or increases everyone's rates), consumers will still face discriminatory charges, as some customers will be bound by the arbitration clause and others will not be.  Those not bound will obtain that same rate without subjecting themselves to the terms and conditions which made that rate possible."  
Boomer
, 309 F.3d at 420.  The court found that allowing state law to determine the validity of the various terms and conditions would create a "labyrinth of rates, terms and conditions and this violates Congress's intent in passing the Communications Act."  
Boomer
, 309 F.3d at 420.  

The Seventh Circuit's third reason for finding preemption was based on Section 201(b): "[I]t is clear from Section 201(b) that Congress intended federal law to govern the validity of the rates, terms and conditions of long-distance service contracts.  *** [T]hat section requires all charges and practices related to communication service to be just and reasonable, and it declares unlawful any unjust or unreasonable charges or practices.  47 U.S.C. §201(b).  This language demonstrates Congress's intent that federal law determine the reasonableness of the terms and conditions of long-distance contracts. [Citations].  While Boomer challenges the arbitration clause under the state law doctrine of unconscionability and various state consumer protection statutes, in essence the question is the same whether the term is fair and reasonable.  Permitting such state law challenges would open the door for direct conflicts between federal and state law on the validity of terms and conditions contained in a long-distance service contract."  
Boomer
, 309 F.3d at 420-21.            

The Seventh Circuit concluded: "In sum, in passing the Communications Act Congress sought to ensure that consumers would receive uniform rates and that consumers would not be discriminated against based on their locality.  Allowing state law challenges to the validity of the terms and conditions contained in long-distance contracts, however, results in the very discrimination Congress sought to prevent.  Moreover, the arbitration clause serves to lower customers' rates, and thus an indirect result will be price discrimination, either directly or indirectly (i.e. because customers paying the same price receive different contractual rights).  Finally, Section 201(b) clearly demonstrates Congress's intent that federal law determine the fairness and reasonableness of contractual terms, as opposed to state law principles such as unconscionability."  
Boomer
, 309 F.3d at 423. The court held that the state law challenges to the arbitration clause were impliedly preempted by the FCA.  
Boomer
, 309 F.3d 
at 423.

In 
Ting
, a class action suit was filed against AT&T, alleging that provisions in AT&T's CSA violated California contract and consumer protection laws.  
Ting
, 319 F.3d at 1130.  AT&T appealed the district court's permanent injunction against enforcement of several sections of the CSA, including the binding arbitration provision.  
Ting
, 319 F.3d at 1130.  AT&T argued that application of California's consumer protection laws was preempted by the FCA and the Federal Arbitration Act (9 U.S.C. §1 
et
 
seq
. (2000)).  
Ting
, 319 F.3d at 1130.  The Ninth Circuit 
disagreed with the Seventh Circuit's decision in 
Boomer
: "Because we do not believe that state contract and consumer protection laws obstruct Congress' 'chosen means' for effectuating the purposes of §§201(b) and 202(a) in a detariffed environment, we respectfully disagree with the 
Boomer
 court's conclusion."  
Ting
, 319 F.3d at 1135.  The Ninth Circuit 
read sections 201(b) and 202(a) as "unquestionably [evidencing] a congressional intent that customers receive fair and reasonable rates from telecommunications carriers."  
Ting
, 319 F.3d at 1138.  The Ninth Circuit 
reasoned that the principles of reasonableness and nondiscrimination remain intact because sections 201(b) and 202(a) survived detariffing, but preemption, as a product of the filed tariff doctrine, did not survive detariffing.  
Ting
, 319 F.3d at 1140.  The Ninth Circuit 
found that in enacting the Telecommunications Act of 1996, Congress intended state contract and consumer protection laws to play a role in governing the carrier-consumer relationship.  
Ting
, 319 F.3d at 1144.  The court 
pointed to the FCC 
Order on Reconsideration
: "[W]e note that the Communications Act does not govern issues such as contract formation and breach of contract that arise in a detariffed environment.  As stated in the 
Second Report and Order
, consumers may have remedies under state consumer protection and contract laws as to issues regarding the legal relationship between the carrier and customer in a detariffed regime."  
Order on Reconsideration
, 
Interstate Interexchange Marketplace
, 12 F.C.C. Rep. 15014, 15057 (1997).  The Ninth Circuit 
commented that the FCC noted consumers would not only have the FCC complaint process, but also would be able to pursue remedies under state consumer protection and contract laws (
Interstate Interexchange Marketplace
, 11 F.C.C. Rep. 20730, 20753 (1996)).  
Ting
, 319 F.3d at 1144.

Accordingly, the Ninth Circuit 
disagreed with the Seventh Circuit's decision in 
Boomer
: "In the post-tariff environment, we find no reason to imply a conflict between otherwise complementary state and federal laws.  In deregulated markets, compliance with state law is the norm rather than the exception.  Congress recognized as much in authorizing forbearance authority and in emphasizing competition in the 1996 Act."  
Ting
, 319 F.3d at 1143.  
The Ninth Circuit found that the FCA does not preempt state-law defenses because there is no conflict with state law.  
Ting
, 319 F.3d at 1146.   
          

The Seventh Circuit has directly answered the question of whether the FCA preempts Illinois law.  Reading sections 201(b) and 202(a) together, the Seventh Circuit held that the FCA preempts state-law challenges to the enforcement of AT&T's arbitration clause.  Ramette, citing to 
Weiland v. Telectronics Pacing Systems, Inc.
, 188 Ill. 2d 415, 721 N.E.2d 1149 
(1999), argues that an Illinois court may refuse to follow a federal preemption decision it finds wrongly decided.  Ramette urges this court to reject the Seventh Circuit's decision in 
Boomer
 and follow the Ninth Circuit's decision in 
Ting
, arguing that the Ninth Circuit's decision 
is a much more carefully reasoned opinion detailing the congressional intent in enacting detariffing.  Ramette further argues that 
Boomer
 misread section 202 of the FCA, as permitting no deviation in rates or terms or conditions of service.  Ramette contends that section 202 is not interpreted to require strict uniformity in a nontariffed environment.  Citing to 
Metro East
, 294 F.3d 924, Ramette argues that 
Boomer
 is inconsistent with other Seventh Circuit precedent.  Even though 
Metro East
 was a filed tariff decision, Ramette contends that it also stands for the proposition that in a nontariffed environment published rates and rules presumably may be varied by customer-specific contracts. 
Metro East
, 294 F.3d 924
.  Accordingly, Ramette urges this court to reject the Seventh Circuit's decision in 
Boomer
. 
 However, 
Metro East
 is distinguishable because it was decided during a time governed by filed tariffs and any comments about a detariffed environment were 
dicta
.  Furthermore, 
Boomer
 is a well-reasoned opinion that detailed the congressional intent behind the FCA.  Therefore, these arguments are not persuasive.     

Ramette urges this court to reject the Seventh's Circuit's decision in 
Boomer
 as incorrect.  He argues that Illinois law is consistent with the purpose and objectives of section 201 of the FCA, requiring "All charges, practices, classifications, and regulations *** shall be just and reasonable." 47 U.S.C. §201(b) (2000).  Ramette disagrees with 
Boomer
's assertion that section 201(b) cannot be satisfied if arbitration provisions were declared illegal under state law.  Ramette contends that the federal and state laws do not conflict but, rather, complement each other.  Ramette alleges that AT&T could enter into just and reasonable contracts that comply with state consumer protection and contract laws.  However, Ramette fails to recognize the purpose of the FCA was to advance uniformity in telecommunication services.  Allowing state-law challenges to the CSA would create a diversity in terms and conditions of service.  

We determine what deference, if any, is due to the Seventh Circuit decision in 
Boomer
.  
The history of deference given to the federal courts was recently reviewed in 
Mekertichian v. Mercedes-Benz U.S.A., L.L.C.
, ___ Ill. App. 3d ___, 807 N.E.2d 1165, 1170-71 (2004): 

"In 
Wilson
, our supreme court followed the Seventh Circuit's interpretation of the Federal Employers' Liability Act (45 U.S.C. § 51 
et
 
seq.
 (1994)).  In its decision, the court stated that 'federal decisions are considered controlling on Illinois state courts interpreting a federal statute' because the federal statute must be given uniform application. [
Wilson v. Norfolk & Western Ry. Co.
, 187 Ill. 2d 369, 383, 718 N.E.2d 172 (1999)].  Were the Illinois Supreme Court to adopt a rule contrary to that of the Seventh Circuit, the viability of a claim under a federal statute could turn on whether the action was filed in federal or state court.  
Wilson
, 187 Ill. 2d at 383, 718 N.E.2d at 179.  

Six months later, however, in 
Weiland
, 188 Ill. 2d 415, 721 N.E.2d 1149, our supreme court determined that it need not follow Seventh Circuit precedent interpreting a federal statute for three reasons--the United States Supreme Court had not ruled on the issue, there was a split of authority among the federal circuit courts of appeals, and the court believed that the controlling Seventh Circuit decision was wrongly decided. 
Weiland
, 188 Ill. 2d at 423, 721 N.E.2d at 1154.  In an apparent attempt to reconcile the 
Wilson
 and 
Weiland
 decisions, the court then stated in 
Sprietsma v. Mercury Marine
, 197 Ill. 2d 112, 757 N.E.2d 75 (2001), 
reversed on other grounds
, 537 U.S. 51, 154 L. Ed. 2d 466, 
123 S. Ct. 518 (2002):

'Although we have stated in the past that the decisions of federal courts interpreting a federal statute are controlling on Illinois courts [citation], this overstates the degree of deference this court must pay to federal decisions.  Thus, in [
Wilson
], we elected to follow the precedent of the Seventh Circuit with regard to its interpretation of the Federal Employer's Liability Act (FELA) (45 U.S.C. §51 
et
 
seq.
 (1994))
, because we found the Seventh Circuit analysis to be "reasonable and logical."  More recently, however, we declined to follow Seventh Circuit precedent in a case involving a preemption issue under FELA when there was a split of authority among the federal circuits and we believed the Seventh Circuit case was wrongly decided. [Citation].  

Nevertheless, as we have repeatedly recognized, uniformity of decision is an important consideration when state courts interpret federal statutes. [Citations.] *** In the absence of a decision of the United States Supreme Court, which would definitively answer the question presented by this case, we elect to give considerable weight to the decisions of federal courts of appeals and federal district courts that have addressed this issue.' *** 
Sprietsma
, 197 Ill. 2d at 119-20, 757 N.E.2d at 80. 

Accordingly, federal circuit court decisions are considered persuasive, but not binding on us or our supreme court in the absence of a decision by the United States Supreme Court as recognized in 
Sprietsma
." (Emphasis omitted.)  
Mekertichian
, ___ Ill. App. 3d at ___, 807 N.E.2d at 1170-71. 
 

In light of the split in authority between the Seventh Circuit and the Ninth Circuit, we look to see which decision is more reasonable and logical.  We find 
Boomer
 to be persuasive in its logic and reasoning.  
Boomer
 has also been followed outside the Seventh Circuit.  
In re Universal Service Fund Telephone Billing Practices Litigation
, 300 F. Supp. 2d 1107, 1117 (D. Kan. 2003) (
Universal Service
), held that substantive challenges to the terms of a telephone carrier's arbitration clause are preempted by the FCA.  
Universal Service
 involved a multidistrict litigation consisting of numerous putative class action lawsuits arising against AT&T, Sprint, and MCI.  
Universal Service
, 300 F. Supp. 2d at 1113.  These class actions arose out of allegations that the service providers unlawfully charged customers sums greater than those required to finance universal service funds for subsidizing telecommunication services for low income customers.  
Universal Service
, 300 F. Supp. 2d at 1113-14.  Most of these class actions were consolidated into a multidistrict proceeding and transferred to a federal court in Kansas.  
The service providers filed a motion to compel arbitration, which the court granted.  
Universal Service
, 300 F. Supp. 2d at 1114.

At oral argument, Ramette argued that 
Universal Service
 held that state-law challenges to arbitration agreements are authorized by the Federal Arbitration Act (9 U.S.C. §1 
et
 
seq
. (2000)) (FAA) and the FCA cannot preempt the right to challenge an arbitration agreement.  The court did find that the FAA allows a plaintiff to raise procedural unconscionability challenges to the enforceability of an arbitration clause, and these arguments are not preempted by the FCA.  
Universal Service
, 300 F. Supp. 2d at 1121.  However, 
Universal Service
 does not support Ramette's position that the FCA cannot preempt the right to challenge an arbitration agreement.  The court in 
Universal Service
 clearly held that substantive unconscionability challenges to the terms of a telecommunications service contract are preempted by the FCA.  
Universal Service
, 300 F. Supp. 2d at 1117.  The court noted that the goal of uniform rates, term, and conditions survived detariffing, and that absent preemption, carriers would be subject to 50 different state laws:

"This court certainly agrees with the aspect of the Seventh Circuit's holding in 
Boomer
 that the FCA's uniformity principle survived detariffing. *** The FCA's uniformity or nondiscrimination principle is embodied in §202(a), [
Western Union Telegraph Co. v. Esteve Brothers & Co.
], 256 U.S. 566, 571, 41 S. Ct. 584, 65 L. Ed. 1094 (1921) (citing the predecessor to §
202(a) as establishing the uniformity principle); [
North American Phillips Corp. v. Emery Air Freight Corp.
], 579 F.2d 229, 232 (2nd Cir. 1978) (explaining that the purpose of §
202(a) was to establish a uniformity of rates in all interstate transactions), and therefore the Congressional objective of achieving uniformity in rates, terms, and conditions of service remains in full force notwithstanding detariffing.

Applying the laws of all fifty states to defendants' interstate long distance service contracts would impede the Congressional objective of achieving this uniformity.  If courts were to apply all of those various laws, the result would be that no uniform body of federal law would emerge to guide long distance carriers such as AT&T and Sprint in attempting to ascertain the lawfulness of the provisions in their service agreements.  Instead, they would be left to guess whether each provision passes muster under the laws of all fifty states. *** Thus, the lack of uniformity in the laws of all fifty states will in fact ultimately impede the Congressional objective of uniformity.  Carriers such as defendants should be entitled to rely on uniform federal standards when determining how to fashion their service agreements.  Application of a uniform federal standard, not application of the various fifty states' laws, will further the Congressional objective of achieving uniformity in long distance carriers' service contracts."  
Universal Service
, 300 F. Supp. 2d at 1119-20.     
   

Universal Service
 does not support Ramette's position but, rather, reinforces AT&T's argument and 
Boomer
's holding that there must be uniformity in service contracts.  However, as 
Universal Service
 stresses, the FCA preemption is not absolute.  
Universal Service
, 300 F. Supp. 2d at 1120.  Although the FCC stated that the FCA governs "determinations as to whether rates, terms, and conditions *** are just and reasonable, and are not unjustly or unreasonably discriminatory," the FCC clearly stated that the Act "does not govern other issues, such as contract formation and breach of contract, that arise in a detariffed environment."  
Order on Reconsideration
, 
Interstate Interexchange Marketplace
, 12 F.C.C. Rep. 15014, 15057 (1997).  

In the instant case, the challenge to the actual arbitration clause is a challenge to neither the formation nor to the breach of the CSA.  Rather, Ramette is claiming that the arbitration clause, by its very inclusion, is unfair and should not be enforced.  As such, the arbitration clause is a term and condition of services, which is governed by the FCC.  As 
Universal Service
 noted, substantive unconscionability challenges involve arguments that the terms and conditions of the CSA are unjust and unreasonable.  
Universal Service
, 300 F. Supp. 2d at 1120.  These challenges are preempted by the FCA, and may only be challenged as violations of the FCA.  
Universal Service
, 300 F. Supp. 2d at 1120-21.  Ramette raises the same argument as being both procedurally and substantively unconscionable.  Ramette claims that the legal remedies provision of the CSA is procedurally unconscionable because "AT&T's customers did not have a meaningful choice regarding the CSA's legal remedies provisions and arbitration because AT&T's major competitors -- Sprint and MCI -- also imposed arbitration and together these companies controlled 90% of the market."  However, Ramette also claims that the legal remedies provision of the CSA is substantively unconscionable because "AT&T without question had superior bargaining power regarding arbitration because its two major competitors - Sprint and MCI - also required arbitration."  However, this argument lends support that uniformity in service contracts is necessary.  The FCC must be able to determine whether the various long-distance service providers should be allowed to contain arbitration agreements.  The FCC must be able to determine whether these arbitration agreements are fair.    

Furthermore, Ramette does not dispute that AT&T mailed the CSA to him, that he received it, and that he accepted its terms by continuing to use AT&T's services.  Thus, he does not argue that there was no offer, no acceptance, no reasonable opportunity to reject, and no consideration.  Accordingly, we find the challenge to be a substantive unconscionability challenge.  Therefore, the challenge to the arbitration clause can be brought only through the proper federal procedure because state challenges are preempted by the FCA.  

We agree with 
Boomer
 and 
Universal Service
, that the congressional objective of achieving uniformity in rates, terms, and conditions of service survived detariffing.  Allowing state challenges would impede the congressional objective of achieving uniformity in telecommunication services.  AT&T would be faced with different laws from different states and would have no uniform body of federal law to follow in proposing services and contracts.  This would frustrate the congressional purpose of uniformity.  Furthermore, state law challenges would destroy the consistency of rates and cause discrimination.  Customers in some states would be bound by an arbitration agreement that would not bind customers in others states.  We find 
the congressional objective of achieving uniformity sufficiently strong.  
Therefore, we follow the reasoning in 
Boomer
, and find that the FCA preempts Ramette's state-law unconscionability challenge to AT&T's arbitration clause.       

II.  Unconscionability 

Both parties agree that in the absence of preemption Illinois law governs the unconscionability issue.  However, because we have decided that according to 
Boomer
, the FCA preempts Ramette's state-law challenge to this arbitration clause, we need not address the merits of Ramette's unconscionability claim.

Even if we were to find Ramette's challenge to the arbitration clause to be procedural in nature, and thus not preempted by the FCA, under Illinois law, we would affirm the circuit court's decision.  The legal remedies provision and, specifically, the arbitration provision are not procedurally unconscionable.  Ramette received the CSA in an envelope that was separate from his monthly bill, which stated "
ATTENTION:
 Important information concerning your AT&T service enclosed."  The CSA Mailing included a cover letter and sheet of frequently asked questions that specifically highlighted that the CSA contained a mandatory arbitration provision.  The arbitration provision contained a conspicuous paragraph in capital letters and bold text, notifying Ramette and other AT&T customers that they were relinquishing their right to bring claims in court.  The CSA Mailing provided a method for customers to reject the terms offered by AT&T.  Ramette had the option to call a toll-free number and cancel his services with AT&T.  Customers were clearly informed that they would accept the terms of the CSA by continuing to use AT&T services.  Ramette did not cancel his AT&T service and accepted the terms of the CSA by continuing to use his AT&T service.  Illinois courts have enforced arbitration clauses under similar circumstances.  See 
Rosen v. SCIL, LLC.
, 343 Ill. App. 3d 1075, 799 N.E.2d 488 (2003) (finding arbitration provision in consumer agreement binding and enforceable); 
Hutcherson v. Sears Roebuck & Co.
, 342 Ill. App. 3d 109, 120, 793 N.E.2d 886 (2003) (enforcing arbitration provision in credit card agreement that was mailed to customers); 
Hill v. Gateway 2000, Inc.
, 105 F.3d 1147, 1150 (7th Cir. 1997) (finding an arbitration agreement delivered in a computer box, which stated that they governed unless the computer was returned within 30 days, were binding on the buyer who did not return the computer).  

Furthermore, under Illinois law, "[b]efore a contract or clause will not be enforced, it must be found to be both procedurally and substantively unconscionable."  
Rosen
, 343 Ill. App. 3d at 1081.  Thus, unless the arbitration clause is found to be both procedurally and substantively unconscionable, it is not unconscionable under Illinois law and will be enforced.  In the instant case, we have determined that the FCA preempts state-law challenges to the substantive unconscionability of an arbitration clause.  Therefore, because an Illinois court is barred from determining substantive unconscionability, the court cannot determine that the arbitration clause is both procedurally and substantively unconscionable.  Accordingly, the arbitration clause cannot be found unconscionable under Illinois and will be enforced.  If Ramette wishes to challenge the terms of the arbitration agreement, Ramette must bring this claim in the appropriate federal forum.          
         
  

Under the FCA, provisions must be just and reasonable.  47 U.S.C. §201(b) (2000).  Therefore, Ramette must pursue his unconscionability argument as an "unjust and unreasonable"

argument under the federal requirements.  Section 207 of the FCA provides that any person alleging damage by a common carrier can file a complaint with the FCC.  47 U.S.C. §207 (2000).  Section 208 similarly allows that any person complaining of an act or omission by a common carrier may apply to the FCC by petition.  47 U.S.C. §
208 (2000).  A statement of the complaint will be forwarded by the FCC to the common carrier, who must satisfy the complaint or answer the complaint in writing to the FCC.  47 U.S.C. §
208 (2000)
.  

Therefore, any relief Ramette believes he is entitled to must begin with a complaint to the FCC.  See 
Boomer
, 309 F.3d at 420 n.9.  
See 
In re Long Distance Telecommunication Litigation
, 831 F.2d 627, 631 (6th Cir. 1987) (finding the FCC has primary jurisdiction to determine if a term or condition of a long-distance service contract is unreasonable); 
Metro East
, 294 F.3d at 927 (finding that the FCC has exclusive authority to set aside an arbitration clause in a filed tariff environment). 

CONCLUSION

For all of the foregoing reasons, we affirm the decision of the circuit court.  

Affirmed.   
 

CAHILL and BURKE, JJ., concur.