[No. G034719. Fourth Dist., Div. Three. Sept. 26, 2005.]

NICOLAS E. VILLACRESES et al., Plaintiffs and Appellants, v. ARTHUR MOLINARI et al., Defendants and Respondents.

COUNSEL

Parsekian Law Corporation, Thomas N. Parsekian; and Robert J. Wheeler for Plaintiffs and Appellants.

J. Scott Souders for Defendants and Respondents.

OPINION

**BEDSWORTH, J.**—This is a cautionary tale. If the first rule of medicine is "Do no harm," the first rule of contracting should be "Read the documents."

Nicolas E. and Clare Villacreses appeal from a judgment confirming an arbitration decision in favor of Arthur and Jane Molinari, the people who sold the Villacreses their home. Although the Villacreses contend the arbitrator erred in a couple of respects, affecting both the merits of the arbitration decision and the Molinaris' entitlement to costs, their main complaint is that the parties never entered into any arbitration agreement at all.

We are compelled to agree with that latter contention. The only arbitration language in the parties' agreement is the warning language required by statute to *accompany* any arbitration agreement contained in a real estate sale contract. That language is not itself intended to be an arbitration agreement, and we cannot construe it as one. Because the parties never entered into any cognizable arbitration agreement, the judgment, confirming the result of an arbitration conducted over the Villacreses' objection, must be reversed. In light of that conclusion, the Villacreses' other arguments, pertaining to the merits of the arbitrator's decision, are moot.[1]

---

[1] Consequently, the request for judicial notice of documents relating to the arbitrator's award of costs is also moot and denied on that basis.

On September 27, 2001, the Villacreses entered into a written agreement to purchase a home in Laguna Niguel from the Molinaris. The agreement, consisting of one page and apparently drafted by the parties themselves,[2] provided, among other things, that "Seller shall disclose known material facts and defects and make other disclosures required by law." That agreement contained no mention of arbitration.

On September 20, 2001, the parties executed another agreement in connection with opening escrow on the sale (the escrow agreement). That agreement, which appears to be a standardized, printed document created by a company yclept "Your Escrow Company," includes a provision stating, "THE PARTIES HERETO ACKNOWLEDGE THAT THIS IS THE SOLE AGREEMENT BETWEEN THEM CONCERNING THE SALE AND PURCHASE OF THE SUBJECT PROPERTY."

The escrow agreement also includes a paragraph 13, which states "[t]he following provisions, provided by the parties to this escrow are inserted herein as a matter of record at the request of the parties and Your Escrow Company shall have no duty or responsibility in connection therewith." That disclaimer is followed by a sub-paragraph "A," in bold print, which states: "ARBITRATION OF DISPUTES: 'NOTICE: BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO HAVE NEUTRAL ARBITRATION OF ALL DISPUTES TO WHICH IT APPLIES AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW, YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL ARE AFFECTED. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.' "

Beneath that subparagraph was a space for each party to initial, and each did so. Those initials were followed by a further printed sentence stating "NOTE: IT IS UNDERSTOOD BY THE PARTIES HERETO THAT THE FOREGOING PROVISION IS NOT BINDING UPON YOUR ESCROW COMPANY."

Paragraph 10A1 of the escrow agreement provides "Seller has: 15 days after September 17, 2001, (a) to deliver to Buyer all reports, disclosures and

---

[2] The Molinaris argue the agreement was drafted and submitted to them by the Villacreses, but our record contains no evidence on the point. In any event, this was not the type of form agreement which this court recently analyzed and enforced in *Frei v. Davey* (2004) 124 Cal.App.4th 1506 [22 Cal.Rptr.3d 429].

information for which Seller is responsible concerning Sewer, Septic and Wells, Pest Control, Property Disclosures . . . ."

On October 21, 2001, the Molinaris signed a real estate transfer disclosure statement in which they disclaimed awareness of any defects or malfunctions in, among other things, the foundations walls or fences of the home. They also disclaimed awareness of any of the following: (1) "Room additions, structural modifications, or other alterations or repairs made without necessary permits"; (2) "Room additions, structural modifications, or other alterations or repairs not in compliance with building codes"; (3) "Fill, (compacted otherwise) on the property or any portion thereof"; (4) "Any settling from any cause, or slippage, sliding, or other soil problems"; (5) "Flooding, drainage or grading problems" or (6) "Major damage to the property or any of the structures from fire, earthquake, floods or landslides."

Escrow subsequently closed and the Villacreses moved into the home. Thereafter, however, they allege they noticed a multitude of problems including: drainage and resultant geotechnical problems beneath the house; subsurface water and drainage problems in the backyard; soil saturation; tiles in a downstairs bathroom which did not properly adhere to supporting surfaces; a deteriorating wrought iron fence in the backyard; a defectively constructed shed; a defectively constructed storage area under the stairs, electrical wiring installed in violation of building codes; a dryer venting system installed in violation of building codes; and, an improperly operating garage door.

On March 27, 2002, the Villacreses filed a complaint stating causes of action for breach of contract, negligence, negligent misrepresentation, and intentional misrepresentation relating to the Molinaris' alleged failure to disclose defects of the real property. They sought rescission of the property sale agreement. Shortly thereafter, the Molinaris requested arbitration of the dispute, based upon the arbitration language contained in the escrow agreement. When the Villacreses refused the request, the Molinaris filed an unverified petition to compel arbitration.

The petition was as bare-bones as a medical school skeleton. It merely alleged the parties had entered into the escrow agreement, which contained an arbitration provision in its paragraph 13. The language of that provision was not set forth in the petition, but an unauthenticated copy of the escrow agreement was attached to the petition. No supporting declaration or other evidence was attached.

The Villacreses opposed the petition, arguing first that the petition should be denied because it was unsupported by evidence. They also asserted that their initial one-page purchase agreement, rather than the escrow agreement,

constituted the operative agreement, and contained no arbitration provision. They asserted the arbitration language in the escrow agreement should be applied only to any dispute which arose "in the escrow and related to activities involving the escrow, escrow officer, and the closing of said escrow" rather than to any dispute between themselves and the Molinaris.

The Molinaris' reply brief was accompanied by a declaration executed by their attorney, purporting to authenticate a copy of the escrow agreement, based upon his own alleged "personal knowledge." The brief itself argued that because the escrow agreement provided it was the "sole agreement" between the parties concerning the sale of the property, its arbitration provision applied.

On July 10, 2002, the court granted the motion to compel, and stayed the litigation pending completion of the arbitration. After several continuances, the arbitration commenced in July of 2003, and consumed about four days spread over a period of three months. The matter was submitted for decision in November of 2003.

In December of 2003, while the arbitrator's decision was pending, the trial court dismissed the stayed litigation, after having been informed that the arbitration hearing had been completed. The court specifically reserved jurisdiction "to confirm any arbitration award and make any orders in furtherance of justice."

The arbitrator issued his decision in March of 2004. He concluded the Molinaris had breached their obligation to disclose "any improvements, alterations or repairs made by them or known to them to have been made without required governmental permits." He further concluded, however, that the Villacreses "failed to prove that they suffered any damages in connection therewith." He declined to order rescission of the property sale agreement, as requested by the Villacreses, and stated the Molinaris were entitled to their costs, as determined by motion.

The arbitrator subsequently determined the escrow agreement did not entitle the Molinaris to recovery of any attorney fees, but awarded them costs in the approximate amount of $30,000.

The Molinaris filed a petition to confirm the arbitration award in June of 2004. The Villacreses opposed the confirmation, and affirmatively sought an order vacating the award. They argued, among other things, that there was no authority, either statutory or contractual, to compel arbitration of the dispute. In that context, they pointed out that even assuming paragraph 13 of the escrow agreement were applicable to this dispute, it was nonetheless an

incomplete and ambiguous provision, with no specification of what disputes would be arbitrated. They also argued that the decision was internally inconsistent, and that the arbitrator had awarded an improper amount of costs.

On November 10, 2004, the superior court granted the petition to confirm the arbitration award, and denied the motion to vacate it. The court entered a judgment in accordance with the terms of the award.

## I

■ As explained in *State Farm Fire & Casualty v. Hardin* (1989) 211 Cal.App.3d 501, 506 [259 Cal.Rptr. 433], an order compelling arbitration is nonappealable. However, " 'a party compelled to arbitrate is entitled to have the validity of the order reviewed on his appeal from a judgment confirming an award.' " (*Ibid.*, quoting *Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 [133 Cal.Rptr. 775].) "[T]he preferred procedure in arbitration proceedings is to proceed with the arbitration and attack the intermediate rulings in connection with a petition to vacate or confirm the arbitrator's award or on appeal from the judgment confirming the award." (*International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 706 [199 Cal.Rptr. 690].) In accordance with these authorities, the Villacreses have properly challenged the propriety of the order compelling them to arbitrate.

## II

■ In light of California's strong public policy favoring arbitration as a method of dispute resolution, "[c]ourts should indulge every intendment to give effect to such proceedings (*Lewsadder v. Mitchum, Jones & Templeton, Inc.* [(1973)] 36 Cal.App.3d 255, 259 [111 Cal.Rptr. 405]) and order arbitration unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. (*Retail Clerks Union, Local 775 v. Purity Stores, Inc.* [(1974)] 41 Cal.App.3d 225, 231 [116 Cal.Rptr. 40].)" (*Pacific Inv. Co. v. Townsend* (1976) 58 Cal.App.3d 1, 9–10 [129 Cal.Rptr. 489].) Hence, any reasonable doubt as to whether a claim falls within the arbitration clause is to be resolved in favor of arbitration. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 687 [99 Cal.Rptr.2d 809].)

Nonetheless, "[a]rbitration is a matter of contract and a party cannot be required to arbitrate a dispute he has not agreed to submit." (*Pacific Inv. Co. v. Townsend, supra,* 58 Cal.App.3d at p. 9.) Moreover, California's general policy "favoring enforcement of valid arbitration agreements is insufficient to warrant imposing a higher burden on a party opposing arbitration, especially when the existence and enforceability of the agreement to arbitrate is the very issue before the trial court." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 [58 Cal.Rptr.2d 875, 926 P.2d 1061].)

 In determining whether an enforceable arbitration agreement exists, the initial burden is on the party petitioning to compel arbitration. "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 413; see *Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Once the petitioner has met that burden, the burden shifts to the party opposing arbitration, to "produc[e] evidence of, and prov[e] by a preponderance of the evidence, any fact necessary to the defense." (*Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 413.)

In the instant case, the Molinaris offered no evidence at all in support of their petition, and it failed utterly to establish, by a preponderance of the evidence, that any arbitration agreement existed. Their petition should have been denied on that basis alone. But the Villacreses did not make that argument on appeal, and we need not decide on that basis, as there is a more fundamental problem with the purported agreement.

The language touted by the Molinaris as the parties' arbitration agreement in this case clearly suggests some limitation on the scope of that agreement. Specifically, paragraph 13 of the escrow agreement states that "by initialing in the space below, you are agreeing to have neutral arbitration of all disputes *to which it applies* . . . ." (Italics added.) That language is not consistent with the conclusion the parties were agreeing to arbitrate any and all disputes between them. Their agreement, if any, is constrained by the scope of "it."

Consequently, to paraphrase the immortal words of a former President of the United States, the applicability of this purported arbitration agreement to the instant dispute "depends upon what the meaning of the word '*it*' is." Without knowing what "it" is, or what "it" applies to, we have no information

about the scope of disputes the parties might have intended to arbitrate. Unfortunately, "it" is never defined anywhere. There is simply no referent for this pronoun. The escrow agreement itself offers no clue, as the "it" reference contained in paragraph 13 does not connect to any other part of the document. And the Molinaris, of course, offered the trial court no extrinsic evidence to suggest what "it" might have referred to, and thus gave the court no basis to conclude that the language was intended by the parties to cover this particular dispute.[3]

Hence, even if we assume the escrow agreement, including the arbitration language, had been properly authenticated and offered as evidence in support of the petition to compel arbitration, we could not conclude the language was sufficient to demonstrate that the parties had agreed to arbitrate the claims at issue in this case. The Molinaris simply failed to meet their initial burden of demonstrating any agreement to arbitrate this dispute.

And in fact, it appears the arbitration language contained in paragraph 13 of the escrow agreement was not, in and of itself, intended to constitute an arbitration agreement. Instead, the language appears to have been included in the agreement so as to comply with Code of Civil Procedure section 1298, in the event the parties did choose to insert *an actual arbitration provision* into their contract.

Code of Civil Procedure section 1298 (section 1298), subdivision (a) states "Whenever any contract to convey real property . . . contains a provision for binding arbitration of any dispute between the principals in the transaction, the contract shall have that provision clearly titled 'ARBITRATION OF DISPUTES.' [¶] If a provision for binding arbitration is included in a printed contract, it shall be set out in at least 8-point bold type or in contrasting red in at least 8-point type, and if the provision is included in a typed contract, it shall be set out in capital letters."

Subdivision (c) of section 1298 then states "Immediately before the line or space provided for the parties to indicate their assent or nonassent to the arbitration provision described in subdivision (a) or (b), *and immediately following that arbitration provision, the following shall appear*: [¶] 'NOTICE: BY INITIALLING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE

---

[3] Instead, the Molinaris merely highlighted the phrase "all disputes," to suggest a broad scope, while simply ignoring the limiting language. They continue that tactic on appeal.

THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIAL-LING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.' [¶] 'WE HAVE READ AND UNDER-STAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARIS-ING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.' " (Italics added.)

■ This advisory language, which is mandated by section 1298 as an *accompaniment* to an arbitration provision inserted into a real estate sale contract, is not intended to *be* the agreement. Yet it is virtually the same language which is argued to *constitute* the supposed arbitration provision in the escrow agreement at issue here. The only alterations occur at the points where section 1298 uses the phrase "ARBITRATION OF DISPUTES PRO-VISION." (§ 1298.) Where that phrase appears in the statutory advisory, paragraph 13 omits it and alters the sentence to work around the omission. Thus, the phrase "AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW," from section 1298, becomes "AGREEING TO HAVE NEUTRAL ARBITRATION OF ALL DISPUTES TO WHICH IT APPLIES . . . ." And the phrase "YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION" becomes "YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL ARE AFFECTED."

■ The effect of these alterations makes the language of the supposed arbitration provision herein even less specific than the advisory language required by section 1298, which presupposes the parties are otherwise agreeing to some express terms. In any event, it is clear the mysterious "it" in paragraph 13 is intended to refer to an arbitration provision that the parties could have chosen to insert into the document. Following such a provision, paragraph 13 makes sense as the required statutory advisory. Standing alone, however, it merely suggests the parties agreed to arbitrate something, which

is not revealed in the document. Because the proffered arbitration provision was incomplete, and the Molinaris offered no extrinsic evidence suggesting the parties intended to arbitrate this dispute, the court should have denied the petition for arbitration and refused to confirm the award.

The judgment is reversed and the Villacreses are to recover their costs on appeal.

Sills, P. J., and Fybel, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 14, 2005.