2005 OK 51

Donna J. ROGERS and Paul Palmer d/b/a Fab Seal Industrial Liners, Inc., Plaintiffs/Appellees,

v.

DELL COMPUTER CORPORATION, Defendant/Appellant.

No. 99,991.

Supreme Court of Oklahoma.

June 28, 2005.

Rehearing Denied Nov. 14, 2005.

As Corrected Nov. 29, 2005.

J. David Cawthon, Bradley C. West, Terry W. West, The West Law Firm, Shawnee, OK, for the plaintiffs.

John N. Hermes, McAfee & Taft, Oklahoma City, OK, for the defendant on the Reply in Support of the Petition for Writ of Certiorari.

James L. Kincaid, Gerald L. Jackson, Crowe & Dunlevy, Oklahoma City, OK, for the defendant before the Court of Civil Appeals and on the Petition for Writ of Certiorari.

TAYLOR, J.

¶1 The issues in this case are: (1) the jurisdiction of this Court and of the district court, (2) the proper procedures in the district court on application to compel arbitration, and (3) the existence and force of an arbitration provision allegedly sent with an invoice and acknowledgment and with the purchased computer. We find this Court has jurisdiction over this appeal and the district court had jurisdiction of the issues below as framed by the plaintiffs. Because the proper

procedures were not followed in the district court, we cannot say whether the district court's denial of the application to compel arbitration was proper and whether the arbitration provision attached to the application is enforceable against the plaintiffs. Therefore, we remand the case with instructions to follow the procedures set out in this opinion.

## I. BACKGROUND AND PROCEDURAL ISSUES

¶ 2 Paul Palmer, doing business as Fab Seal Industrial Liners, Inc., and Donna Rogers (collectively plaintiffs) filed suit against Dell Computer Corporation, later renamed Dell, Inc., (Dell) asking for certification as a class action and alleging violations of the Oklahoma Consumer Protection Act, 15 O.S. 2001, §§ 751–763, negligence, and breach of contract. Dell filed a motion to dismiss for lack of jurisdiction and failure to state a claim or, alternatively, to compel arbitration. The district court denied Dell's motion. Dell appealed the part of the order denying the application to compel arbitration invoking appellate jurisdiction pursuant to section 817(A) of the Oklahoma Uniform Arbitration Act, 15 O.S.2001, § 801–18 (OUAA).[1] The Court of Civil Appeals affirmed the district court's denial of the application to compel arbitration.[2]

## II. JURISDICTION

### A. Oklahoma Uniform Arbitration Act

■ ¶ 3 It is the duty of this Court to inquire into its own jurisdiction and the jurisdiction of the court below. *City of Lawton v. International Union of Police Ass'n,* 2002 OK 1, ¶ 10, 41 P.3d 371, 376. Oklahoma Supreme Court Rule 1.60(i), 12 O.S.2001, ch. 12, app. (OSCR), provides that appeals

made under the provisions of section 817 of the OUAA are appealable by right. Section 817 allows appeals from an order denying an application to compel arbitration made pursuant to section 803 of the OUAA. With limited exceptions, the OUAA applies to a written agreement or a provision in a written contract to submit controversies between the parties to arbitration. § 802(A) of the OUAA. Because Dell's application to compel arbitration alleged a written agreement to arbitrate claims against it, the dispute before this Court comes within the OUAA's purview as well as the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1994 & Supp.2001) (FAA), as discussed in part IV below. The application of the OUAA and FAA are not mutually exclusive. *See Volt v. Board of Trustees of the Leland Stanford Jr. Univ.,* 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

¶ 4 The OUAA does not apply to "collective bargaining agreements or contracts with reference to insurance except for those contracts between insurance companies." § 802 of the OUAA. The FAA does not except these two contracts from its application. Therefore these two types of agreements come under the FAA but not the OUAA. The denial of an application to compel arbitration under these type of contracts would not be appealable to this Court by right. *See* rule 1.60(i) of the OSCR. Here both the OUAA and the FAA are applicable. Because the OUAA is applicable here, the order denying Dell's application to compel arbitration is appealable by right under rule 1.60. Thus, this Court has jurisdiction of the appeal.

### B. Oklahoma Uniform Tax Procedures Act

¶ 5 As to the district court's jurisdiction, the district court denied Dell's motion to dismiss for lack of jurisdiction. The crux of

1. During its most recent session, the Oklahoma Legislature replaced the 2001 version of the OUAA.2005 Okla. Sess. Laws, ch. 364 (to be codified at 12 O.S.Supp.2002, §§ 1851–81).

2. The style of documents filed in this appeal name Dell, Dell Catalog Sales Limited Partnership, Dell Marketing Limited Partnership, Qualxserv, LLC and Banctec, Inc. as defendants and appellants. The district court docket sheets show an amended petition was filed and name Dell as the only defendant. The plaintiffs have

stated that the amended petition altered the original petition only by adding defendants. However, the amended petition is not included in the appellate record. The petition filed in the district court names only Dell as a defendant. The petition in error and the petition for certiorari are filed only by Dell. Nothing in the record shows that Dell Catalog Sales Limited Partnership, Dell Marketing Limited Partnership, Qualxserv, LLC and Banctec, Inc. are parties in the case below or to this appeal.

Dell's motion was that the plaintiffs' claims are a transparent attempt to generate a class action suit when in reality the plaintiffs are seeking a tax refund which must first be addressed by the Oklahoma Tax Commission. Dell submitted that the district court should have dismissed the petition because the plaintiffs failed to exhaust their administrative remedies.

¶ 6 Section 227 of title 68 of the Oklahoma Statutes provides a mechanism for a refund of taxes erroneously paid. Section 225 provides the means for appeals for denial of a refund. Section 202 defines a taxpayer as any person liable to pay any state tax. If the plaintiffs' claims are for a refund of the sales tax collected either by mistake of fact, error in computation or misinterpretation of law, the plaintiffs would have to first seek relief with the Oklahoma Tax Commission pursuant to these sections. *See Stallings v. Oklahoma Tax Comm'n,* 1994 OK 99, 880 P.2d 912.

¶ 7 The plaintiffs protested Dell's characterization of their claims. The plaintiffs emphasized that their position was Dell "charges and collects from Oklahoma residents monies falsely characterized as a sales tax on the purchase of optional service contracts, and/or on transportation charges (*i.e.,* shipping and handling charges) for the delivery of computers and computer products." We confine our review to the issues based on plaintiffs characterization of the claims. Thus, proof that the "sales taxes" were remitted to the Oklahoma Tax Commission as Dell alleges would be a defense to the plaintiffs' claims as the plaintiffs have limited them.

### III. FACTS

¶ 8 For reasons discussed below, our statement of the facts are those to which the parties admit either in the district court or in this appeal. Dell, a Texas-based company, sells computers through direct marketing. Customers place orders directly with Dell. Dell ships the purchased computers from Texas and Tennessee. In addition to the computers, Dell markets service contracts.

¶ 9 Dell attached what it alleges are the Rogers invoice and the Fab Seal acknowledgment to its motion to dismiss or compel arbitration. Dell also attached a document taken from one of its internet pages and entitled "Terms and Conditions of Sale." [3] Dell did not attest to the accuracy of any of these attachments or to the alleged fact that these documents were sent to plaintiffs. Further, there is nothing in the record about how the plaintiffs ordered the computers, whether over the internet, by mail, or by phone. Likewise, there is nothing in the record about the processes and conversations between Dell and the plaintiffs when they placed their orders or whether the plaintiffs were required to consent to the "Terms and Conditions of Sale" when placing the orders.

¶ 10 We assume for purposes of discussion only that the plaintiffs received the representative "Terms and Conditions of Sale" document either with the invoice and acknowledgment, with the shipment of the computer, or both. The arbitration provision included in the "Terms and Conditions of Sale" document, if received and if enforceable, would require the plaintiffs to submit their claims against Dell or its affiliates to binding arbitration.

### IV. APPLICABLE LAW

¶ 11 The FAA applies to contracts affecting interstate commerce. 9 U.S.C. § 1 (2000); *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 269, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Under section 2 of the FAA, a written agreement to submit an issue to arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Suits brought upon issues falling within section 2 must be stayed until after "arbitration

3. Unlike shrinkwrap agreements which are included in the package with the purchased product and available to the purchaser only after opening the package, *Davidson & Assoc., Inc. v. Internet Gateway,* 334 F.Supp.2d 1164, 1176 (E.D.Mo.2004), the "Terms and Conditions of Sale" document in this case were allegedly included with the invoices and acknowledgments as well as with the product package. A click-wrap agreement appears at the beginning of the installation of software and requires the user to consent to the terms before continuing. *Id.*

has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (2000). A stay is also required by the OUAA, 15 O.S. 2001, § 803(D).[4]

¶ 12 The FAA does not preempt state law unless the state law frustrates the Congressional purposes and objectives embodied in the FAA. *Volt,* 489 U.S. at 477, 109 S.Ct. 1248. The FAA was enacted "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate", *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219–220, 105 S.Ct. 1238, 84 L.Ed.2d 158, and to put arbitration agreements on an equal footing with other contracts. *Volt,* 489 U.S. at 478, 109 S.Ct. 1248.

¶ 13 Where a contract affecting interstate commerce contains an arbitration provision and does not provide otherwise, the FAA requires the question of the contract's validity as a whole to be submitted to arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg.Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). *But cf. Shaffer v. Jeffery,* 1996 OK 47, ¶ 26, 915 P.2d 910, 917–18 (under the OUAA, issues of fraud in the inducement of the contract underlying the arbitration agreement are for the court's determination).[5] Under the FAA, issues relating only to the validity of the arbitration provision are generally subject to a judicial determination. *Prima Paint,* 388 U.S. at 403–404, 87 S.Ct. 1801. In considering whether an arbitration provision is binding on the parties, it is severed from the rest of the contract. *A.T. Cross v. Royal Selangor(s) PTE, LTD.,* 217 F.Supp.2d 229, 233 (D.R.I.2002).

¶ 14 The court's role is to determine whether there is a valid, enforceable agreement to arbitrate the dispute. *Wilkinson v. Dean Witter Reynolds, Inc.,* 1997 OK 20, ¶ 9, 933 P.2d 878, 880 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 680 (8th Cir.2001). The existence of an arbitration agreement is governed by principles of state law. *Wilkinson,* 1997 OK 20 at ¶ 9, 933 P.2d at 880. Because under the FAA this court cannot examine the validity of the contract as a whole, *Prima Paint,* 388 U.S. at 404, 87 S.Ct. 1801 we must treat the contract as valid when analyzing an arbitration provision.

## V. PROCEEDINGS ON THE APPLICATION TO COMPEL ARBITRATION

¶ 15 In Oklahoma state courts, the OUAA determines how proceedings on an application to compel arbitration shall be conducted so long as the OUAA does not frustrate the purposes underlying the FAA. *See Volt,* 489 U.S. at 476, 109 S.Ct. 1248 ("There is no federal policy favoring arbitration under a certain set of procedural rules...."); *Southland Corp. v. Keating,* 465 U.S. 1, n. 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 268 (Tex.1992). When there is a written agreement to submit a controversy to arbitration and one party denies the existence of the agreement, the court shall proceed summarily in deciding the issue. 15 O.S.2001, § 803; *see* 9 U.S.C. § 4 (If the making of arbitration agreement is at issue, "the court shall proceed summarily to the trial thereof."); Tex. Civ. Prac. & Rem.Code Ann. § 171.021 (West 2005) (If the existence of an agreement to arbitrate is at issue, "the court shall summarily determine that issue.").

¶ 16 Section 815 of the OUAA provides that an application to compel arbitration "shall be heard in the manner ... for making and hearing of motions in actions." Proceedings on motions are addressed in rule 4 of

---

4. Texas Uniform Arbitration Act also requires that court proceedings be stayed. Tex.Rev.Civ. Prac. & Rem.Code Ann. §§ 171.021 & 171.025 (West 2005).

5. Under the newly enacted provisions of the OUAA, "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." 2005 Okla. Sess. Laws, ch. 364, § 7(C). The new OUAA provisions apply (1) agreements to arbitrate made on or after January 1, 2006, (2) agreements to arbitrate before January 1, 2006, if on the record the parties so agree, and (3) starting on January 1, 2006, to agreements to arbitrate whenever made. *Id.* at § 4.

the Rules for District Courts of Oklahoma, 12 O.S.Supp.2002, ch. 2, app. (ORDC). Under rule 4 of the ORDC, the party seeking to compel arbitration must present a statement of the law and facts showing an enforceable agreement to arbitrate the issues presented by the petition. *Id.* at rule 4(c). The application to compel arbitration must be supported by affidavits, pleadings, stipulations, and other evidentiary materials which are verified by a person having knowledge of their accuracy. *Id.* Alternatively, counsel may submit a verified statement of what the proof will show and then present the proof at the hearing. *Id.* The moving party must also submit a concise brief including a list of authorities on which it relies. *See id.* Within fifteen days after the application is served, a party opposing the application to compel arbitration must file a brief or list of authorities and, if appropriate, verify the facts supporting its position. *Id.*

¶ 17 Either party may request a hearing. The decision to grant a hearing will be in the discretion of the district court. *See id.* at rule 4(d). However, if the existence of an agreement to arbitrate is controverted, then the better procedure is for the district court to conduct an evidentiary hearing before entering an order. In making its decision, the district court should be mindful of the FAA's and the OUAA's policies favoring arbitration; ambiguity falls on the side of the existence of an agreement to arbitrate. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Wilkinson v. Dean Witter Reynolds, Inc.,* 1997 OK 20, ¶ 8, 933 P.2d 878, 879; *Shaffer v. Jeffery,* 1996 OK 47 at ¶ 23, 915 P.2d at 917.

## VI. STANDARD OF REVIEW

 ¶ 18 Under the proceedings governing applications to compel arbitration, the existence of an agreement to arbitrate is a question of law. Questions of laws are re-

viewed *de novo. Hill v. Blevins,* 2005 OK 11, ¶ 3, 109 P.3d 332, 334; *Cummings v. Fedex Ground Package System, Inc.,* 404 F.3d 1258, 1261 (10th Cir.2005).

## VII. EXISTENCE OF AN ARBITRATION AGREEMENT

¶ 19 Under the initial step of determining whether the parties have a written agreement to arbitrate, courts should apply state contract law. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). At this stage, a court may need to conduct a choice of law analysis. However, both Oklahoma and Texas have adopted the Uniform Commercial Code (U.C.C.), 12A O.S.2001, §§ 1–101 to 11–107 (Oklahoma U.C.C.); Tex. Bus. & Com. Code Ann., §§ 1.101–11.108 (West 1994 & Supp.2004–05) (Texas U.C.C.),[6] which, as shown below, is applicable here. Although Dell asserts Texas law applies, neither Dell nor the plaintiffs have maintained that there is any difference in the applicable law of Texas and Oklahoma. Thus any perceived choice-of-law issue is contrived.

¶ 20 The U.C.C. applies to "transactions in goods." U.C.C. § 2–102. "Goods" are "all things (including specially manufactured goods) which are moveable at the time of identification to the contract...." U.C.C. § 2–105. Because the contracts in this case deal primarily with the sale of goods, the U.C.C. applies here.

¶ 21 Oklahoma and, apparently, Texas have not addressed the substantive issue before this Court.[7] However, two courts have applied Texas law in addressing nearly identical claims and arguments as presented in this case and have reached different conclusions. *Stenzel v. Dell, Inc.,* 2005 ME 37, 870 A.2d 133 (Me.2005); *Defontes v. Dell Computers Corp.,* No. C.A. PC 03–2636, 2004 WL 253560 (R.I.Super.Jan.29, 2004) *cited in Stenzel,* 2005 ME 37 at ¶ 28, 870 A.2d at 144

---

6. Unless otherwise indicated, references to the U.C.C. include the parallel provisions of the Oklahoma U.C.C. and the Texas U.C.C.

7. We note that the Division IV of the Oklahoma Court of Civil Appeals in *Lively v. IJAM, Inc.,* 2005 OK CIV APP 29, 114 P.3d 487, (ordered for

publication by the Oklahoma Court of Civil Appeals, *see* 12 O.S.2001, ch. 15, app., rule 1.200(c)(2)), determined that a "consent to jurisdiction" sent as part of an invoice did not bind the purchaser.

(under Rhode Island Supreme Court Rule 16(j), this order has no precedential effect). Both the *Stenzel* and the *Defontes* courts found the facts to be as follows. Dell sold computers to the plaintiffs. It also marketed service contracts on behalf of third-party service providers. Dell charged what was listed as a sales tax on the service contracts and on shipping charges. Dell remitted the amount of the sales tax to either the state where the computer was shipped or turned it over to the third-party service provider who remitted the tax to the state. After an order was placed, Dell sent each plaintiff an acknowledgment or an invoice. With the invoice or acknowledgment, Dell included a "Terms and Conditions of Sale" document which is substantially the same as the one attached to its application to compel arbitration in the present case. The document was also included with the computer shipments. The computers were sold through interstate commerce.

¶ 22 The *Defontes* court concluded that the plaintiffs did not knowingly consent to the additional terms in Dell's "Terms and Conditions Agreement" document. 2004 WL 253560, at *7. Therefore, the arbitration provision was not part of the parties' contracts, and the court denied the application to compel arbitration. *Id.* The court implicitly applied section 2.207 of the Texas U.C.C. when it found that the plaintiffs were not bound by the arbitration agreement. *Id.*

¶ 23 The *Stenzel* court, citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir.1997); and *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir.1996), found that the purchasers had "expressly manifested their assent to be bound" by the arbitration provision by accepting delivery of and failing to return the computers as provided in the agreement. *Stenzel*, 2005 ME 37 at ¶ 12, 870 A.2d at 140. The court continued by citing

section 2.204(a) of the Texas U.C.C.[8] and concluded that the contract was formed when the plaintiffs failed "to refuse delivery of the computers" and failed "to exercise their right to return the computers." *Id.* Based on its language, the court assumed without analysis that Dell was the offeror. *Id.* at 140, ¶¶ 10–12. The court rejected the plaintiffs' claims that the arbitration provision was illusory, *id.* at 140–43, ¶¶ 15–23 and unconscionable, *id.* at 143–45, ¶¶ 24–32, and affirmed the judgment of the lower court dismissing the complaint in favor of arbitration. *Id.* at 145–46, ¶ 37.

¶ 24 *Stenzel* and *Defontes* are indicative of the split of authority on whether documents such as the "Terms and Conditions of Sale" submitted by Dell in the present case are binding. The cases most often cited as indicative of the disparate outcome are *ProCD, Inc.*, 86 F.3d 1447 (7th Cir.1996) (the court applied the U.C.C. to a shrinkwrap license agreement and found the agreement to be binding), and *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.2d 91 (3rd Cir.1991) (applying the U.C.C., the box-top license agreement was not binding). The difference in outcome is generally attributable to a court's determination of when the contract was formed. The cases on which the *Stenzel* court based its conclusion are distinguishable. Further, the *Stenzel* court did not recognize the application of section 2–207 of the U.C.C. to the facts. We find the *Defontes* opinion to be better reasoned but find a more complete analysis is needed.

¶ 25 There is no doubt that in the present case, the parties entered into contracts for the purchase of computers. The question then becomes when were the contracts formed and what terms were included in the contracts. Generally subsection 2–206(1) of the U.C.C answers the first question. Subsection 2–206(1) provides: "Unless otherwise unambiguously indicated by the language or circumstances . . . an order or

---

**8.** Section 2.204 of the Texas Business and Commercial Code, as does the comparable provisions of the U.C.C. and the Oklahoma Statutes, provides:

> (a) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

> (b) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

> (c) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance ... by a prompt promise to ship...."

¶ 26 Under section 2–206(1) of the U.C.C., the buyer is the offeror, and a contract is formed when an order is placed and the seller agrees to ship unless the language and circumstances involved in the transaction unambiguously show otherwise. In this case, the time of formation of the contracts and their terms depend on the conversations and circumstances between Dell and the plaintiffs at the time the orders were placed. If the language and circumstances were such that when the orders were placed, the contracts were not formed until after the plaintiffs received the "Terms and Conditions of Sale" document, the arbitration provisions would be a term of the contracts. The arbitration provision would also be a term of the contracts if it were incorporated into them at the time the plaintiffs placed the orders.

¶ 27 If the contracts were formed at the time that the orders were placed and the "Terms and Conditions of Sale" document was not incorporated into the contracts, the second question becomes relevant to the analysis. The second question is generally answered by applying section 2–207 of the U.C.C.[9] Subsections 2–207(1) and (2) provide:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

9. Section 2–207 of the U.C.C. was amended in 2003 to provide:

Subject to section 2–202, if (I) conduct by both parties recognizes the existence of a contract although their records do not otherwise establish a contract, (ii) a contract is formed by an offer and acceptance, or (iii) a contract formed in any manner is confirmed by a record that contains terms additional to or different from those in the contract being confirmed, the terms of the contract are:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Comment 1 provides that section 2–207 is intended to deal with the typical situation where the parties reach an oral agreement which is followed by one of the parties sending a document including the agreed terms and adding terms not discussed.

¶ 28 There is no statement in the "Terms and Conditions of Sale" document upon which "acceptance is expressly made conditional on assent to the additional terms." The plaintiffs' accepting the computers and not returning them is consistent with a contract being formed at the time that the orders were placed and cannot be construed as acquiescing in the "Terms and Conditions of Sale" document whether included with the invoice or acknowledgment or with the computer packaging. If the contracts were formed at the time the orders were placed, *see* U.C.C. § 2–206(1), the "Terms and Conditions of Sale" document, including the arbitration provision, would be an additional term of the contracts under section 2–207. The arbitration provision would not be part of the contracts but proposals to add it as a term to the contracts. *Id.* at § 207(1)-(2). The facts necessary for the application of this analysis are not in the record presented for appellate review. Thus, this Court cannot determine whether the arbitration provision was part of the contract and enforceable against the plaintiffs, so to decide whether the application to compel arbitration was properly denied.

(a) terms that appear in the records of both parties;

(b) terms, whether in a record or not, to which both parties agree; and

(c) terms supplied or incorporated under any provision of this Act.

Unif. Comm.Code, 1 U.L.A. 397–99 (2004). Neither Oklahoma nor Texas has adopted the 2003 amended version of section 2–207. Thus, we do not apply the 2003 amendment to section 2–207 in this case.

¶ 29 We are not unmindful of two recent Texas Court of Appeals' decisions: *Dell, Inc. v. Muniz,* Nos. 04–04–00722–CV, 04–04–00752–CV, 2005 WL 659154 (Tex.Ct.App. Mar. 23, 2005) (not "released for publication" and "subject to revision or withdrawal"), and *Smith v. Gateway, Inc.,* No. 03–01–00589–CV, 2002 WL 1728615 (Tex.Ct.App. July 26, 2002) (not designated for publication and without precedential value). These two cases are not helpful here primarily for the following reasons. In *Muniz,* the parties agreed that the arbitration agreement was binding, 163 S.W.3d 177, 2005 WL 659154, at *3, and only contested whether the claim fell within the arbitration agreement's exceptions. In *Smith,* "Gateway established that an arbitration agreement existed between the parties." 2002 WL 1728615, at *2. However, the *Smith* court does not give us the facts underlying this conclusion.

¶ 30 Our analysis is limited to agreements which fall under article 2 of the U.C.C. This opinion's analysis does not include agreements to which article 2 of the U.C.C. is inapplicable, such as agreements which are not for the sale of goods.[10] It also does not include clickwrap agreements where a party must assent to the terms before continuing an on-line purchase or installation of software.

## VIII. PROSPECTIVE APPLICATION

¶ 31 Because we have not before addressed the procedures to be employed in proceedings on applications to compel arbitration, we only impose these procedures prospectively to applications to compel arbitration filed after mandate issues in this appeal. *See McDaneld v. Lynn Hickey Dodge, Inc.,* 1999 OK 30, ¶ 12, 979 P.2d 252, 257. Because of the failure to use these procedures, the parties failed to provide the district court with sufficient facts to determine whether there was an arbitration provision which was enforceable against the plaintiffs. Therefore, the matter is remanded to the district court for further proceedings conforming to the procedures set out in this opinion.

## IX. CONCLUSION

¶ 32 In conclusion, on applications to compel arbitration, the district court should follow the summary procedures set out in this opinion. Because this Court has not previously articulated the procedures to be followed on applications to compel arbitration, they apply only to those applications filed after mandate of this appeal. Section 2–207 and other provisions of the U.C.C. apply to the contracts here and apply to terms which Dell can show were enclosed with the invoice, with the acknowledgment, or in the package containing the purchased product. On *de novo* review, the record is insufficient to support the order denying the application to compel arbitration. We reverse the district court's order denying the application to compel arbitration and remand with instructions. The Court of Civil Appeal's opinion is vacated.

COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S ORDER REVERSED; CAUSE REMANDED.

LAVENDER, OPALA, KAUGER, EDMONDSON, TAYLOR, JJ., concur.

WATT, C.J., with whom WINCHESTER, V.C.J., HARGRAVE and COLBERT, JJ. join, concurs. I would withdraw certiorari as having been improvidently granted.

KAUGER, J., dissenting to the denial of rehearing.

¶ 1 I originally concurred in the Court's opinion of June 28, 2005, which reversed and remanded the cause to the trial court. There, the Court held that jurisdiction was proper, but because the "proper procedures" were not followed in the district court, the

---

**10.** We realize that courts have applied article 2 of the U.C.C. to license agreements. The question of whether article 2 of the UCC applies to licenses is not before this Court.

In 1999, the National Conference of Commissioners of Uniform State Laws drafted the Uniform Computer Information Transactions Act, 7– II U.L.A. 195 (2002 & Supp.2004), at *http://www.law.upenn.edu/bll/ulc/ucita/ucita200.htm* (last accessed May 29, 2005), to fill a gap in the UCC regarding software licenses. *Id.;* see UCC §§ 2–102, 2A–102. Only Maryland and Virginia have adopted the UCITA. *Id.* at 6 (Supp.2005).

issues regarding the application to compel arbitration and enforceability of the arbitration provisions were undeterminable. I now withdraw my concurring vote, and dissent.

¶ 2 The June 28, 2005, opinion notes in ¶ 8 that:

"...our statement of the facts are those to which the parties admit either in the district court or in this appeal...."

The opinion also determines in ¶ 9 that:

"...there is nothing in the record about how the plaintiffs ordered the computers, whether over the internet, by mail, or by phone. Likewise, there is nothing about the processes and conversations between Dell and the plaintiffs when they placed their orders or whether they were required to consent to the 'Terms and Conditions of Sale' when placing the orders...."

The opinion also discerns that the facts necessary for the application of the analysis of whether the arbitration agreement is integrated into the Terms and Conditions of Sale or whether it is a proposal to add terms to the contract are not in the record presented for review.

¶ 3 It has become painfully clear what exactly was missing ----- anything which would allow a court to make a legally competent determination as to whether there was an agreement to arbitrate, let alone whether an agreement was enforceable. After acknowledging that necessary information is missing, the majority bases its conclusion on assumptions. The opinion states in ¶ 10:

"We assume for purposes of discussion only that the plaintiffs received the representative 'Terms and Conditions of Sale' document either with the invoice and acknowledgment, with the shipment of the computer, or both. The arbitration provision included in the 'Terms and Conditions of Sale' document, if received and if enforceable, would require the plaintiffs to submit their claims against Dell or its affiliates to binding arbitration."

¶ 4 The record includes Dell's motion to dismiss the petition and/or compel arbitration, which offers generalities as to how it typically operates when customers order computers. Dell provides nothing specific to this cause. The motion to dismiss quotes terms and conditions of sale and agreements to arbitrate which it alleges the plaintiff's agreed on. Attached to the motion are:

1) copies of portions of the Oklahoma Administrative Code;

2) a copy of a tax commission ruling;

3) copies of an invoice to the plaintiff, Fab Seal Industries, dated 9/13/02, and an invoice to the plaintiff, Rogers, dated 10/10/01; and finally,

4) copies of a terms and conditions of sale printed from the internet on 6/4/03 that include an arbitration provision.[1]

¶ 5 Identical language is contained in each of the invoices which state: "PLEASE SEE IMPORTANT TERMS & CONDITIONS ON THE REVERSE SIDE OF THIS INVOICE." **The reverse side of the invoices are blank** ----- and the terms and conditions which are provided in the record were printed two years after the first invoice and a year after the second invoice.

¶ 6 Although the Court makes assumptions as to the existence of an arbitration agreement, the plaintiffs have always denied its existence. The plaintiffs assert, in response to Dell's motion to dismiss the petition and/or compel arbitration, that:

"In its zeal to compel Plaintiff's into arbitration, Dell skips past the threshold question; *i.e.*, whether an enforceable agreement to arbitrate exists between Dell and Plaintiffs....

...As the moving party, Dell has the burden of establishing the existence of an agreement to arbitrate...To be sure, Dell highlights an arbitration clause found in a document published on its Internet website, *www.dell.com*, as of June 4,

---

1. It is noted that the bottom of the terms and conditions document states a copyright for 1999–2003 to Dell Corporation. Comparing quoted portions of the terms and conditions mentioned in the caselaw suggests that the those involved in other cases and the one provided by Dell are substantially similar—at least to the extent that the documents are quoted. The most current version available online differs from the one submitted by formatting changes and the provision regarding Texas law governing has been expanded.

2003.... But Dell fails to present this Court with any document signed by either of Plaintiffs and purporting to be an agreement to arbitrate, nor does Dell offer any affidavit attesting that the unsigned, standard form document attached to its motion as Exhibit E was in any way presented to and accepted by either of Plaintiffs in 2001 and 2002, respectively when they purchased the computers." [2]

¶ 7 In its reply to the plaintiff's response to Dell's motion to dismiss the petition and/or compel arbitration, Dell argues that the plaintiffs had three opportunities to review the contract, including the arbitration clause: 1) at Dell's website; 2) when the invoice or acknowledgment of the order was received; and 3) with the shipment of the order. Dell also noted that should Plaintiffs decide to contest the issue, Dell was prepared to submit affidavits to confirm that notification of the terms and conditions of the sale were fully communicated to purchasers. Although the matter was contested, no affidavits were submitted. As the majority opinion notes, "Dell did not attest to the accuracy of any of these attachments or to the alleged fact that these documents were sent to plaintiffs."

¶ 8 The initial burden is on the party petitioning the court to compel arbitration.[3] After the motion to compel arbitration has been made and supported, the burden is on the non-moving party to present evidence that the supported arbitration agreement is not valid or that it does not apply to the dispute in question.[4]

¶ 9 A motion to compel arbitration is analogous to a motion for summary judgment.[5] On a motion for summary judgment the movant must attach to its concise written statement copies of the acceptable evidentiary materials relied upon to support the motion.[6] Similarly, on a motion to compel arbitration, the movant must at least present an agreement to arbitrate to garner a hearing on the issue. Had this been presented as a summary judgment motion and the moving party could not show that a disputed agreement existed, it would have been dismissed. Accordingly, the trial court properly denied Dell's motion to compel arbitration.

¶ 10 The Court neither issues advisory opinions nor answers hypothetical questions.[7] Nevertheless, after recognizing that it could not make a determination concerning whether the decision to compel arbitration was properly denied because there is no arbitration agreement in the record, the opinion goes to exhaustive lengths to set forth "proper procedures" for the trial court to use.

¶ 11 After recognizing that the existence of an agreement to arbitrate is a question of law, and admitting that the are insufficient

**2.** The plaintiff presented an addendum to its motion in opposition which includes: 1) a copy of Dell's privacy policy dated effective February 2, 2000; 2) the Better Business Bureau's on-line reliability program requirements and dispute resolution standards; and 3) a copy of the National Arbitration Forum's Code of Procedure.

**3.** *Fleetwood Enterprises, Inc. v. Bruno*, 784 So.2d 277, 279 (Ala.2000); *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th 394, 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (1996) [Applying California procedures for summary determination to court when considering petition to compel arbitration.]. The Uniform Arbitration Act 15 O.S.2001 § 803 provides in pertinent part:
"...A....If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue ...
B. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no valid agreement to arbitrate. Such an issue shall be summarily tried...."

**4.** *Fleetwood Enterprises, Inc. v. Bruno*, see note 3, supra; *Rosenthal v. Great Western Fin. Securities Corp.*, see note 3, supra. In a recent California case, *Villacreses v. Molinari*, 132 Cal.App.4th 1223, 34 Cal.Rptr.3d 281, 2005 WL 2336760 (2005), the California Court of Appeals determined that a petition to arbitrate should have been denied on the sole basis that the party seeking arbitration offered no evidence at all in support of their petition, and failed utterly to establish, by a preponderance of the evidence, that any arbitration agreement existed.

**5.** *Fleetwood Enterprises, Inc. v. Bruno*, see note 3, supra.

**6.** *Evers v. F.S.F. Overlake Associates*, 2003 OK 53, ¶ 9, 77 P.3d 581; Rules for the District Courts, 12 O.S.2001 Ch. 2, App. 1 Rule 13.

**7.** *Tulsa County Budget Board v. Tulsa County Excise Board*, 2003 OK 103, ¶ 18, n. 31, 81 P.3d 662; *Dank v. Benson*, 2000 OK 40, ¶ 7, 5 P.3d 1088.

facts to determine whether the plaintiffs agreed to arbitrate, the Court holds that "the record is insufficient to support the order denying the application to compel arbitration." If the record were insufficient to support a finding of an agreement to arbitrate, which it is, how could it also be insufficient to support an order which denies an application to compel arbitration? It can't. The order denying the application to compel arbitration was and should have been denied. Here, the decision issued regarding the validity of an arbitration agreement is based on assumed facts and results in an advisory opinion.

¶ 12 On July 18, 2005, Dell filed a petition for rehearing seeking reconsideration of part VII of the opinion, which concerns the existence of an arbitration agreement. Dell urges the Court to change the opinion and overrule the trial court's order denying Dell's motion to compel arbitration. Dell argues that the opinion undermines the policies of the Uniform Commercial Code, 12A O.S.2001 §§ 1–101 *et seq.* by disregarding established commercial practices and by ignoring the weight of the case law established under § 2–207 of the Uniform Commercial Code.[8] Section 2–207 is inapplicable to acceptance of a product when the terms and conditions are included in the packaging and the product is not returned. While I cannot agree with the result that Dell would have us reach because the record is totally insufficient, in retrospect, Dell's argument that the minority view[9] embraced in the opinion is impractica-

---

8. Title 12A O.S.2001 § 2–207 provides:
"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
 (a) the offer expressly limits acceptance to the terms of the offer;
 (b) they materially alter it; or
 (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act."

9. The majority approach recognizes that the contract is formed when the purchaser fails to return a product, under the assumption that the seller is master of the offer, and holds the purchaser bound by any terms included in the packaging of the product. *Stenzel v. Dell, Inc.,* 2005 ME 37, 870 A.2d 133 (2005); *Rosenbaum v. Gateway, Inc.,* 2004 WL 1462568 (N.Y. Supp. App. Term 2004) [Unpublished opinion.]; *Falbe v. Dell Inc.,* 2004 WL 1588243 (N.D.Ill.2004) [Unpublished opinion.]; *Ramette v. AT & T Corp.,* 351 Ill.App.3d 73, 285 Ill.Dec. 684, 812 N.E.2d 504, 513 (2004); *O'Quin v. Verizon Wireless,* 256 F.Supp.2d 512, 517 (M.D.La.2003); *Lozano v. AT & T Wireless,* 216 F.Supp.2d 1071 (C.D.Cal. 2002); *Beneficial Nat'l. Bank U.S.A. v. Payton,*

214 F.Supp.2d 679, 687 (S.D.2001); *Westendorf v. Gateway 2000, Inc.,* 2000 WL 307369, 3 (Del.Ch.2000)[Unpublished opinion]; *Peerless Wall & Window Coverings, Inc. v. Synchronics, Inc.,* 85 F.Supp.2d 519 (W.D.Penn.2000); *Hill v. Gateway 2000, Inc.,* 105 F.3d 1147, 1150 (7th Cir.1997), *cert. denied,* 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997); *ProCD, Incorporated v. Zeidenberg,* 86 F.3d 1447, 1452 (7th Cir.1996); *Brower v. Gateway 2000, Inc.,* 246 A.D.2d 246, 676 N.Y.S.2d 569, 572 (1998); *Providence & Worcester Railroad Co. v. Sargent & Greenleaf, Inc.,* 802 F.Supp. 680, 685–86 (D.R.I.1992). The minority approach looks to the circumstances surrounding the order of the product; determines when the contract was formed; and then applies § 2–207 of the U.C.C. to determine if the terms included in the packaging are integrated into the contract. *Defontes v. Dell Computers Corp.,* 2004 WL 253560, 6 (R.I.Super.2004); *Klocek v. Gateway, Inc.,* 104 F.Supp.2d 1332, 1338–41 (D.Kan.2000); *U.S. Surgical Corp. v. Orris, Inc.* 5 F.Supp.2d 1201, 1206 (D.Kan.1998); *Arizona Retail Sys. Inc. v. Software Link, Inc.,* 831 F.Supp. 759, 765 (D.Ariz.1993); *Step–Saver Data Systems, Inc. v. Wyse Technology,* 939 F.2d 91, 104 (3rd Cir.1991).

Some of the cases Dell relies on involve on-line click-wrap agreements or licensing agreements where it was clear that a party assented to the terms before continuing the purchase or installation of software. *Davidson & Associates, Inc. v. Internet Gateway,* 334 F.Supp.2d 1164, 1176 (E.D.Mo.2004) [Software end user license agreement was enforceable.]; *DeJohn v. The.TV Corp. Int'l,* 245 F.Supp.2d 913, 918 (N.D.Ill.2003) [Click-wrap agreement which user had to assent to terms before the product could be obtained upheld.]; *Hughes v. McMenamon,* 204 F.Supp.2d 178, 181 (D.Mass.2002) [Click-wrap agreement containing forum selection clause valid.]; *I. Lan Systems, Inc. v. Netscout Service Level Corp.,* 183 F.Supp.2d 328, 337 (D.Mass.2002) [Licensing

ble and not based on today's commercial realities may have merit. However, because there is no agreement in the record, I see no reason to *advise* the trial court as to the "proper procedures" under these facts.

agreement enforceable contract.]; *Forrest v. Verizon Communications, Inc.*, 805 A.2d 1007, 1009 (D.C.App.2002) [Notice of forum selection clause in click-wrap agreement sufficient.]; *Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1104 (C.D.Cal.2002) [Arbitration clause in customer service agreement which did not involve the sale of goods was valid and enforceable.]; *1–A Equipment Co. v. Icode, Inc.*, 2003 WL 549913, 1–2 (Mass.App.Div.2003) [End user software agreement valid.]; *Moore v. Microsoft Corp.*, 293 A.D.2d 587, 741 N.Y.S.2d 91, 92 (2002) [End-user license agreement contained in software program valid.]; *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203 (Tex.App.2001) [Forum selection clause in click-wrap agreement upheld.]; *M.A. Mortenson Co., Inc. v. Timberline Software Corp.*, 140 Wash.2d 568, 998 P.2d 305, 312 (2000) [Terms of shrink-wrap license were part of "layered contract".]; *In Re RealNetworks, Inc.*, 2000 WL 631341, 3 (N.D.Ill.2000) [Licensing agreement which required arbitration upheld.]; *Caspi v. Microsoft Network, L.L.C.*, 323 N.J.Super. 118, 732 A.2d 528, 531 (1999) [Online subscription valid.]. See generally, Kevin W. Grierson, Annot., Enforceability of "Clickwrap" or "Shrinkwrap" Agreements Common in Computer Software, Hardware, and Internet Transactions, 106 A.L.R.5th 309 (2003). The opinion in paragraph 30 notes that the question of the validity of such licensing agreements or clickwrap agreements is not before the court and the analysis is limited to agreements which fall under article 2 of the U.C.C.