949 So.2d 1189 (2007)
The AUCHTER COMPANY, a Florida corporation, Appellant,
v.
Fouad ZAGLOUL, Appellee.
No. 1D06-2817.
District Court of Appeal of Florida, First District.
March 7, 2007.
*1190 John W. Caven, Jr., and Allan P. Clark of Foley & Lardner LLP, Jacksonville and John R. Hamilton, Foley & Lardner LLP, Orlando, for Appellant.
T. Geoffrey Heekin, S. Hunter Malin, and Jeremy T. Simons of Heekin, Malin & Wenzel, P.A., Jacksonville, for Appellee.
Christopher V. Carlyle, Shannon McLin Carlyle, and Gilbert S. Goshorn, Jr., of The Carlyle Appellate Law Firm, The Villages, for Amicus Curiae Associated General Contractors of America and Associated General Contractors of Greater Florida.
WEBSTER, J.
Appellant seeks review of a non-final order denying its Motion to Dismiss and/or Compel Mediation and/or Arbitration and Stay Action filed in response to a complaint stating causes of action based on a contract between appellant (as the contractor) and appellee (as the owner) to build a house. We have jurisdiction. Art. V, § 4(b)(1), Fla. Const. (granting to district courts of appeal jurisdiction to "review interlocutory orders ... to the extent provided by rules adopted by the supreme court"); Fla. R.App. P. 9.130(a)(3)(C)(iv) (providing for appeal to the district courts of appeal of non-final orders that "determine ... the entitlement of a party to arbitration"). See Tropical Ford, Inc. v. Major, 882 So.2d 476 (Fla. 5th DCA 2004) (concluding that rule 9.130(a)(3)(C)(iv) authorizes review of an order denying a motion to stay and compel mediation and, if mediation failed, arbitration, pursuant to a contract between the parties). Because we conclude that the trial court erred as a matter of law when it determined that the mandatory mediation and arbitration provisions of the parties' contract did not survive appellee's purported termination of the contract, we reverse and remand with directions that the trial court grant appellant's motion; compel the parties to submit to mediation and, if mediation fails, to binding arbitration; and stay the action pending the parties' compliance.
The pertinent facts are not in dispute. In 2003, the parties entered into a standard American Institute of Architects (AIA) contract for the construction of a *1191 house on appellee's property. It consisted of two documentsa "Standard Form of Agreement Between Owner and Contractor" (AIA Document A111-1997) and "General Conditions of the Contract for Construction" (AIA Document A201-1997). In 2005, roughly two months after appellant had secured a certificate of occupancy, appellee notified appellant that he was terminating the contract because of what he characterized as "substantial breaches of the [c]ontract." Appellee then filed a four-count complaint seeking damages. Appellant responded with its Motion to Dismiss and/or Compel Mediation and/or Arbitration and Stay Action, arguing that, pursuant to subparagraphs 4.5.1 and 4.6.1 of the General Conditions of the contract, appellee was required to submit any "claims arising out of or related to the [c]ontract" to mediation and, if mediation failed, to binding arbitration. Appellee opposed appellant's motion on the ground that the contract between the parties had been terminated and, as a matter of law, the mediation and arbitration provisions contained in the General Conditions did not survive that termination. Appellee relied principally on the decision in Aberdeen Golf & Country Club v. Bliss Construction, Inc., 932 So.2d 235 (Fla. 4th DCA 2005), which decision appellee contended was binding on the trial court because it was the only Florida appellate decision construing the mediation and arbitration provisions contained in the standard AIA contract. Appellant responded that Aberdeen was not controlling because the discussion of the effect of termination of the contract on the mediation and arbitration provisions was dicta, and the actual holding of the case was that the owner had waived the right to insist on mediation or arbitration when it terminated the contract. Appellant argued that, because it had done nothing to waive its right to insist upon compliance with the mediation and arbitration provisions, Aberdeen had no bearing on the issue. Ultimately, the trial court accepted appellee's position and, relying on Aberdeen for the proposition that the mediation and arbitration provisions of the standard AIA contract were not intended to survive termination of the contract, denied appellant's motion. This appeal follows. Because the trial court's order denying the motion to compel mediation and/or arbitration is based entirely on its construction of the contract documents, our standard of review is de novo. E.g., Powertel, Inc. v. Bexley, 743 So.2d 570, 573 (Fla. 1st DCA 1999).
It would appear that, given the nature of the parties' contract, the applicable law is that found in the Federal Arbitration Act (9 U.S.C. §§ 1-16 (2000)), rather than in the Florida Arbitration Code (§§ 682.01-682.22, Fla.Stat. (2005)). See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (concluding that Congress intended to exercise its full Commerce Clause power when it passed the Federal Arbitration Act). However, for purposes of this appeal, it is irrelevant which law applies because the analysis is the same in either case. According to our supreme court,
[u]nder both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived.
Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999) (citing Terminix Int'l Co. v. Ponzio, 693 So.2d 104, 106 (Fla. 5th DCA 1997)). Accord John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094 (11th Cir.2003). Here, the trial court *1192 based its decision on its conclusion that the mediation and arbitration provisions of the contract did not survive termination of the contracti.e., that no valid agreement to arbitrate existed after termination of the contract. Nobody has suggested that no arbitrable issue exists or that appellant waived its right to arbitrate. Accordingly, we are concerned only with whether the mediation and arbitration provisions contained in the contract were "valid" when appellant sought to invoke them.
The relevant portions of the parties' contract are contained in the General Conditions of the contract. Subparagraph 4.3.1 defines "Claim" as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term `Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." Paragraph 4.4 is titled "RESOLUTION OF CLAIMS AND DISPUTES." Its pertinent provisions read:
4.4.1 Decision of Architect. Claims, including those alleging an error or omission by the Architect but excluding those arising under Paragraphs 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.
. . . .
4.4.5 . . . . The Approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.
Paragraph 4.5 is titled "MEDIATION." Its pertinent provisions read:
4.5.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.
4.5.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.
Paragraph 4.6 is titled "ARBITRATION." Its pertinent provisions read:
4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision of the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior *1193 or to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of paragraph 4.5.
4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.
. . . .
4.6.6 Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.
In Aberdeen Golf & Country Club v. Bliss Construction, Inc., 932 So.2d 235 (Fla. 4th DCA 2005), the court reviewed a non-final order denying a motion to compel arbitration. In Aberdeen, the parties had entered into a standard AIA contract substantively identical to that in this case. There, as here, the owner purported to terminate the contract before completion. Unlike the situation here, however, in Aberdeen the contractor filed a damage action to which the owner responded with a motion requesting that the trial court stay the action and compel arbitration. The contractor argued that the owner had waived its right to insist on arbitration pursuant to the contract when it terminated the contract rather than follow the dispute resolution procedure set out in the contract. The trial court agreed and, accordingly, denied the motion requesting arbitration. On appeal, the court held that the trial court had correctly concluded that the owner's actions had constituted a waiver of its right to insist on arbitration. The court said:
We agree that, after the architect's initial ... decision, the owner's refusal to initiate mediation as a precondition to arbitration and to comply with the duty to make progress payments instead of terminating the contract could be deemed a voluntary and intentional relinquishment of the known right to arbitration.
Id. at 240 (citing Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707 (Fla.2005)). The court also said that, "[i]n repudiating the [alternative dispute resolution provisions of the contract], the owner should not be heard in litigation to claim the benefit of an [alternative dispute resolution] provision it had rejected so clearly and unequivocally." Id. at 241.
It should be apparent that the facts of Aberdeen are readily distinguishable from those of this case. In Aberdeen, the owner, which had repudiated the contract by terminating it, was the party seeking the benefit of the contract's dispute resolution provisions. Although the owner also repudiated the contract by purporting to terminate it in this case, here it is the contractor that is demanding enforcement of those provisions. Clearly, the equities are far different. However, appellee is not relying on the holding in Aberdeen. Instead, he is relying on what we believe is dicta.
For reasons that are not at all clear from the opinion, the court in Aberdeen examines at considerable length the dispute resolution provisions of the contract. Having done so, it then concludes that those provisions were not intended to survive termination of the contract by either party; instead, they were meant merely "to speed dispute resolutions during construction in order to bring about a successful completion of the contract." Id. at 238. *1194 In support of this conclusion, the court notes:
Significantly the contract specifies that, after notice from the complaining party, an initial decision by the architect is a condition precedent "to mediation, arbitration or litigation of all Claims." [e.s.] If the parties meant for arbitration to supplant all litigationeven after a termination before full completionthey would not have inserted litigation, the emphasized word, because their intent then would have been to eliminate litigation entirely. . . . [T]he arbitration clause does not state that it is a precondition to litigation. In fact, nothing in the contract specifies that the arbitration provision is irrevocable and replaces all litigation in court.
Id. Relying on this analysis, the trial court in this case concluded that the dispute resolution provisions of the contract did not survive appellee's purported termination of the contract, and denied appellant's request for mediation and/or arbitration. This was error.
We are unable for several reasons to agree with the Aberdeen court's dicta regarding the intent of the standard AIA contract as to alternative dispute resolution mechanisms. Contrary to the suggestion in Aberdeen, an arbitration provision does not require any type of "savings clause" to survive contract termination. On the contrary, it is well established that the duty to arbitrate does not necessarily end when a contract is terminated, as long as the dispute concerns matters arising under the contract. E.g., Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B., 501 U.S. 190, 208, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991); Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); Doctors Assocs., Inc. v. Thomas, 898 So.2d 159, 162 (Fla. 4th DCA 2005); Qubty v. Nagda, 817 So.2d 952, 956 (Fla. 5th DCA 2002); Milbar Med. Co. v. Medicis Pharm. Corp., 741 So.2d 1198, 1199 (Fla. 4th DCA 1999). Arbitration provisions are to be construed to require arbitration of disputes arising after the cancellation of the underlying contract unless such disputes are specifically excluded from arbitration. E.g., Nolde Bros., 430 U.S. at 255, 97 S.Ct. 1067; Doctors Assocs., 898 So.2d at 162; Qubty, 817 So.2d at 956; Milbar, 741 So.2d at 1199. Because post-termination disputes are not expressly excluded from the scope of the dispute resolution provisions of the contract, we must construe them as intended to be included.
The Aberdeen court apparently overlooked the definition of "Claims" contained in subparagraph 4.3.1 of the General Conditions. It provides that "[a] Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term `Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." (Emphasis added.) This language appears to us intended to be all-inclusive. It does not purport to limit "Claims" to disputes arising before termination of the contract. Moreover, the emphasized language has been interpreted by our supreme court as intended "to encompass virtually all disputes between the contracting parties, including related tort claims." Seifert v. U.S. Home Corp., 750 So.2d 633, 637 (Fla. 1999) (footnote omitted).
Other language in the dispute resolution provisions seems to us to support the conclusion that arbitration is intended to be the sole remedy if a party to the contract *1195 requests it. Subparagraph 4.6.1 states that "[a]ny Claim arising out of or related to the Contract [except certain Claims that are expressly exempted] ... shall ... be subject to arbitration." Similarly, subparagraph 4.6.2 states that "Claims not resolved by mediation shall be decided by arbitration...." Finally, subparagraph 4.6.6 states that "[t]he award rendered by the arbitrator or arbitrators shall be final...." We do not believe that the references to "litigation" in subparagraph 4.4.1 and to "legal or equitable proceedings" in subparagraphs 4.5.1 and 4.5.2 stand for the proposition that the provisions were not intended to be a substitute for litigation in court. Rather, it seems to us more reasonable to conclude that those references are intended merely to make it clear that, even if neither of the parties to the contract requests arbitration, they still must first submit their disputes to the architect, and then to mediation, before they may proceed to litigation.
The Aberdeen court's dicta also disregards the propositions that arbitration clauses are to be given the broadest possible interpretation in order to accomplish the purpose of resolving controversies out of court, see, e.g., Hirshenson v. Spaccio, 800 So.2d 670, 674 (Fla. 5th DCA 2001); Ocwen Fin. Corp. v. Holman, 769 So.2d 481, 483 (Fla. 4th DCA 2000); Royal Caribbean Cruises, Ltd. v. Universal Employment Agency, 664 So.2d 1107, 1108 (Fla. 3d DCA 1995); and that, because arbitration agreements are a favored means of dispute resolution, any doubts concerning their scope should generally be resolved in favor of arbitration. See, e.g., Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 289 (Fla. 1st DCA 2003). To read arbitration provisions such as that in this case as not intended to survive termination of the contract would permit parties to avoid arbitration simply by purporting to terminate the contract, thereby frustrating such policy objectives.
We hold that the dispute resolution provisions of the contract are intended to survive purported termination of the contract by a party. Because the trial court reached the opposite conclusion, we reverse the order denying appellant's Motion to Dismiss and/or Compel Mediation and/or Arbitration and Stay Action; and remand with directions that the trial court order appellee to proceed to mediation and, if mediation fails, to binding arbitration, as contemplated by the agreement he signed, and that it stay further court proceedings pending compliance with that order. As the parties correctly recognize, because there is no architect for the project, compliance with subparagraph 4.4.1 of the General Conditions is not a condition precedent to mediation and/or arbitration. See Manalili v. Commercial Mowing & Grading, 442 So.2d 411, 413 (Fla. 2d DCA 1983).
REVERSED and REMANDED, with directions.
BROWNING, C.J., and PADOVANO, J., concur.