2012 OK CIV APP 2

AMERISTAR COIL PROCESSING, LLC, and Ameristar Fence Products, Inc., Plaintiffs/Appellees,

v.

WILLIAM E. BUFFINGTON COMPANY, INC., Defendant/Appellant.

No. 108,986.

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 7, 2011.

Ross N. Chaffin, Robert D. Tomlinson, Tomlinson Rust McKinstry Grable, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Jonathan C. Neff, Jonathan Neff, P.C., Tulsa, Oklahoma, for Defendant/Appellant.

JANE P. WISEMAN, Judge.

¶1 William E. Buffington Company, Inc., appeals from orders of the trial court refusing its request to compel arbitration. The

issue we address on appeal is whether the trial court erred in finding that a condition precedent had not been met rendering the arbitration clause in the parties' contract unenforceable. For the reasons that follow, we reverse the trial court's decisions and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Ameristar Coil Processing, LLC, and Ameristar Fence Products, Inc. (collectively, Ameristar), filed suit against Buffington on September 7, 2009, for negligence and fraud in connection with a construction project for which Buffington was the general contractor. Ameristar alleged that during 2003, Buffington acted as general contractor for the design and construction of a steel coil processing facility for Ameristar. Ameristar claims that defects in the facility's foundation required a halt in production in late 2008. The facility's foundation was excavated in late December 2008, and Ameristar discovered the foundation "failed to meet the specifications submitted by Buffington to the County of Tulsa for a building permit." The foundation was further excavated in September 2009 and additional defects were discovered.

¶ 3 Buffington filed a motion to dismiss asserting the statute of limitations had expired, Ameristar had agreed to arbitrate all claims arising out of the contract between the parties, and Ameristar failed to plead its fraud claim with particularity. Buffington asserted the contract was signed on March 5, 2003, and the facility was completed by the end of 2003. Buffington claimed that Ameristar noticed problems with the floor slab and equipment foundations in 2006 but failed to bring suit for fraud or negligence within the two-year statute of limitations for these claims which are now time-barred.

¶ 4 Ameristar filed a "Motion to Strike Defendant's Motion to Dismiss, or, in the Alternative, to Convert to a Motion for Partial Summary Judgment and Take Limited Discovery Pursuant to District Court Rule 13(d)." Ameristar claimed that although Buffington called its motion a motion to dismiss, it attached to the motion three documents outside the pleadings. In response, Buffington again asserted that the petition

should be dismissed, or in the alternative, the court should summarily decide whether an enforceable agreement to arbitrate exists and compel arbitration before conducting discovery.

¶ 5 The trial court converted Buffington's motion to dismiss to a motion for summary judgment and granted Ameristar 60 days to conduct limited discovery and to respond to Buffington's motion. The trial court later denied Buffington's motion for summary judgment on the ground that the arbitration clause in the contract between the parties was unenforceable. The day after the trial court's decision, Buffington filed a reply brief in support of its motion for summary judgment. Three days later, Buffington filed a motion to reconsider in which it asserted that its reply brief was its "first and only brief filed after limited discovery was conducted." It claimed its reply brief was its opening brief after discovery and complained the trial court entered an order without considering its brief or conducting a hearing. Ameristar asked the trial court to strike Buffington's reply brief.

¶ 6 The trial court denied Ameristar's motion to strike finding that Buffington "had not had an opportunity to brief the issues raised after the extended discover[y] period." The court granted Buffington's motion to reconsider, vacated the ruling denying Buffington's motion to dismiss, which the court had converted to a motion for summary judgment, and gave the parties 20 days to supplement their briefs on the issue of arbitration.

¶ 7 Buffington filed a supplemental brief and again asserted Ameristar agreed to submit its dispute to arbitration. Buffington cited subparagraph 4.6.2 of the parties' contract, which provides:

> Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration

Association and a copy shall be filed with the Architect.

Buffington claimed Ameristar erroneously relied on subparagraph 4.6.1 which provides:

> Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4, and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.

Buffington asserted that subparagraph 4.6.1 "deals with *timing* of the arbitration, not the fundamental question of whether claims are subject to arbitration." (Emphasis added.) Section 4.4.1 provides in part: "Claims including those alleging an error or omission by the Architect ... shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims...." Buffington claimed subparagraph 4.4.1 contemplates that arbitration will be the final remedy if there is no decision by the architect. Buffington asserted that although the contract gives the architect an opportunity to consider a claim, the ultimate resolution of a claim must be obtained through arbitration.

¶ 8 Ameristar responded that because there was no architect on the project, the condition precedent to arbitration cannot be met and the arbitration clause is therefore unenforceable.

¶ 9 The trial court denied Buffington's motion for summary judgment and agreed with Ameristar, finding "the arbitration clause in the contract contained a condition precedent that was not met and is therefore unenforceable." Buffington filed another motion to reconsider, which the trial court denied.

¶ 10 Buffington appeals.

**STANDARD OF REVIEW**

¶ 11 Although the orders from which Buffington appeals include an order denying its motion for summary judgment and an order denying its motion to reconsider, this is not an appeal from summary proceedings. The effect of the trial court's rulings is a denial of Buffington's attempt to compel arbitration, and the appeal is interlocutory in nature. Okla. Sup.Ct. R. 1.60(i),[1] 12 O.S. Supp.2010, ch. 15, app. 1; 12 O.S.2001 § 1879. We review *de novo* the "question as to the existence of valid enforceable agreements to arbitrate." *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 19, 160 P.3d 936, 944.

**ANALYSIS**

¶ 12 The title of the contract used by the parties was "Standard Form of Agreement Between Owner and Contractor." The contract was the 1997 version of the American Institute of Architects (AIA) owner-contractor agreement. The agreement states the owner is Eddy Gibbs of Ameristar Fence, the contractor is Buffington Co., Inc., the project is Ameristar Steel Warehouse, and the architect is "None. Buffington Co., Inc. is the designer." The agreement also adopts by reference the "AIA Document A201–1997, General Conditions of the Contract for Construction." The General Conditions document provides the following under the heading **"Dispute Resolution—Mediation and Arbitration"** in the document's "General Information" portion: "This document contains provisions for mediation and arbitration of claims and disputes. Mediation is a nonbinding process, but is mandatory under the terms of the document. Arbitration is mandatory under the terms of this document and binding in most states, and under the Federal Arbitration Act."

¶ 13 As noted above, subparagraph 4.4.1 of the General Conditions provides in part: "Claims, including those alleging an error or omission by the Architect ... shall be referred initially to the Architect for decision. An initial decision by the Architect shall be

---

1. Although Oklahoma Supreme Court Rule 1.60(i) refers to 15 O.S.1991 § 817, it was recodified in 2005 to 12 O.S. § 1879 and this change has yet to be reflected in the Oklahoma Supreme Court Rules.

required as a condition precedent to mediation, arbitration or litigation of all Claims...." Ameristar claims there is no ambiguity in the contract because the decision of an architect is required for mandatory arbitration.[2] Ameristar argued, and the trial court agreed, that the arbitration clause was unenforceable because a condition precedent—the rendering of a decision by an architect—was not met.

¶ 14 On appeal, Buffington asserts that there is an enforceable arbitration agreement between the parties, and "regardless of any non-binding opinion of an architect, arbitration is clearly the final, agreed remedy." Ameristar responds, "The clear direction of the Contract is that where there is no Architect to submit a claim to, a condition precedent to mandatory arbitration cannot exist."

¶ 15 A similar issue arose in *Tillman Park, LLC v. Dabbs–Williams General Contractors, LLC*, 298 Ga.App. 27, 679 S.E.2d 67 (2009). In *Tillman*, the parties used the 1997 edition of the AIA standard form agreement, the same edition used by Ameristar and Buffington. The contract in *Tillman* also contained a mandatory arbitration clause and the same provision as the one at issue here that states an initial decision by an architect is a condition precedent to mediation, arbitration or litigation of all claims. *Id.* at 69. On the portion of the contract where the parties were to designate an architect for the project, someone had typed "N/A." *Id.* The contractor argued that "the arbitration agreement is unenforceable, because it requires submission of a dispute to a project 'architect' as a condition precedent to arbitration, and no architect was named in the parties' agreement." *Id.* The condominium development owner whom the contractor was suing presented evidence that the bank financing the project required the use of the AIA form and that it was not uncommon for construction project owners to use the AIA contract even when an architect was not used for a project. *Id.* There was evidence presented that where an architect is not employed, "it is the general practice and under-

standing in the industry to consider contract provisions relating to the architect as having been waived; otherwise, the entire contract would be invalidated, due to the centrality of the architect's role in administering it." *Id.* at 69. The trial court found "that because no architect had been named ... there had been a failure of a condition precedent to arbitration." *Id.* at 70.

¶ 16 In reviewing the trial court's decision, the Georgia Court of Appeals found persuasive the holding of *Auchter Company v. Zagloul*, 949 So.2d 1189 (Fla.Dist.Ct.App.2007). In *Auchter*, the parties used AIA A–201–1997 and in subparagraph 4.4.1, as in the agreement here, their contract provided that claims must be submitted to an architect and that " '[a]n initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims.' " *Id.* at 1192. The parties, however, failed to name an architect for the project. *Id.* at 1195. The Court stated, "because there is no architect for the project, compliance with subparagraph 4.4.1 of the General Conditions is not a condition precedent to mediation and/or arbitration." *Id.*

¶ 17 The *Tillman* Court recognized that although *Auchter* was not binding authority in Georgia, the approach that *Auchter* "takes is consistent with the industry-wide interpretation of the AIA standard-form construction contract general conditions" theory advanced by the party seeking to compel arbitration. *Tillman Park*, 679 S.E.2d at 71. The *Tillman* Court analyzed the situation as follows:

> [C]onstruction of a contract is a question of law for a court. In our opinion, whether failure of the owner to name an architect in a standard-form AIA agreement results in failure to meet a condition precedent thereby dispensing with the agreement's arbitration requirement, or whether it results in an impossibility to satisfy the condition precedent thereby dispensing with the condition-precedent requirement, is a question that the agreement does not unambiguously answer and which statutory

2. Ameristar also argues in numerous places in the record that "the submission" of the dispute to the architect is required by the contract, rather than the architect's "decision." This would

be more consistent with Section 4.6.1 which provides that if there is no decision by the architect within 30 days after submission, the claim is subject to arbitration.

rules of construction do not resolve. The meaning of the contract and intent of the parties therefore becomes [*sic* ] a question for the trier of fact, which is the trial court in this case.

*Id.* The Court further stated, "Unquestionably, failure of the agreement to name an architect in the blank space provided for designation of the architect, while making continuing references to the role of the architect in the standard-form provisions, created an ambiguity explainable by parol evidence." *Id.* at 71–72.

¶ 18 We must apply Oklahoma contract law to determine whether the parties have agreed to arbitrate. *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 19, 138 P.3d 826, 831. However, just as the *Tillman* Court found the reasoning of the *Auchter* Court persuasive, we find the reasoning of the *Tillman* Court persuasive. Here, the contract is ambiguous because it fails to name an architect but makes continuing references to the architect's role throughout the contract. Even had an architect been named, there is ambiguity in this contract. For example, subparagraph 4.4.1 provides an initial decision by the architect is a condition precedent to arbitration. Subparagraph 4.6.1 provides that if the architect's decision is not rendered within thirty days, arbitration may proceed. The fact that no architect was named does not resolve the issue of whether the parties agreed to arbitrate.

¶ 19 "The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made." *Bank of the Wichitas v. Ledford*, 2006 OK 73, ¶ 20, 151 P.3d 103, 111. Through summary process, the trial court adjudicated Buffington's motion seeking to compel arbitration. The trial court concluded that the condition precedent—a decision

on the claim by an architect—did not occur and the arbitration clause was as a consequence unenforceable.

¶ 20 Facts remain in dispute, however, regarding whether the parties intended the arbitration clause to apply when they approved a contract without an architect for the project or intended Buffington as the "designer" to fulfill that role.[3] "An appellate court will not make first-instance determinations of disputed *law or fact* issues. That is the trial court's function *in every case*-whether in law, equity or on appeal from an administrative body." *Bivins v. State ex rel. Oklahoma Mem'l Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464. "When necessary findings are absent, the case must be remanded with directions that they be made by the trial court." *Id.* at n. 37, 917 P.2d 456.

¶ 21 We recognize that the trial court followed the procedure for resolving motions for summary judgment pursuant to Rule 13 of the Rules for District Courts, 12 O.S. Supp.2010, ch. 2, app. and denied Buffington's motion. However, as noted above, this motion should have been treated as a motion to compel arbitration rather than a Rule 13 motion. Regardless of the title given a motion, we will address the motion based on its substance and the relief requested. *Board of Governors of Registered Dentists v. Melton*, 1967 OK 113, ¶ 16, 428 P.2d 205, 209 ("[I]t is the substance of a pleading which controls, rather than the style or form.").

¶ 22 On a motion to compel arbitration, either party may request an evidentiary hearing. *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 17, 138 P.3d 826, 830. Although the decision to grant a hearing is within the trial court's discretion, "if the existence of an agreement to arbitrate is

---

3. Ameristar's response to Buffington's motion for summary judgment includes the affidavit of Eddy Gibbs, who signed the contract on behalf of Ameristar, and a portion of the deposition testimony of Jerry Atchison, who signed the contract on behalf of Buffington. Gibbs states that, at the time he signed the contract, he knew there was no architect named in the contract and believed there was no mandatory arbitration clause because arbitration could be mandatory only after claims were submitted to an architect. R., p.

180. Atchison testified, "It was my understanding when I signed this contract with Mr. Gibbs—and I believe that his understanding of the contract when we signed it was, if there was a dispute, it would go to arbitration." R., p. 178. Despite these submissions in the record, for reasons discussed *infra*, they do not supplant the necessity for an evidentiary hearing to resolve factual disputes about the parties' intent regarding arbitration.

controverted, then the better procedure is for the district court to conduct an evidentiary hearing before entering an order." *Id.* In making this decision, the trial court "should be mindful of the [Federal Arbitration Act's] and the [Oklahoma Uniform Arbitration Act's] policies favoring arbitration; ambiguity falls on the side of the existence of an agreement to arbitrate." *Id.*

¶ 23 Rule 4(c) of the Rules for District Courts provides as follows:

Motions raising fact issues shall be verified by a person having knowledge of the facts, if possible; otherwise, a verified statement by counsel of what the proof will show will suffice until a hearing or stipulation can be provided.

Every motion shall be accompanied by a concise brief or a list of authorities upon which a movant relies.

Rule 4(c) of the Rules for District Courts, 12 O.S. Supp.2010, ch. 2, app. "Without a stipulation settling the fact issues raised by [the party opposing arbitration], the district court [is] duty-bound under Rule 4(c) to grant [the] ... evidentiary hearing and allow [the party seeking the evidentiary hearing] to present proof.... Such a hearing comports with notions of procedural due process." *Oklahoma Oncology & Hematology P.C.*, 2007 OK 12, ¶ 36, 160 P.3d, 936, 950 (finding the trial court erred in failing to order an evidentiary hearing to resolve fact issues as to whether the arbitration fees were so excessive as to render arbitration unconscionable); *see also Dunbar Engineering Corp. v. Rhinosystems, Inc.*, 2010 OK CIV APP 49, ¶¶ 11, 16, 232 P.3d 931, 934–36 (finding the trial court erred in failing to conduct an evidentiary hearing to resolve fact issues as to whether an agreement to arbitrate existed).

¶ 24 Although neither party requested an evidentiary hearing in this case, perhaps because they were following summary judgment process, this does not, in the absence of a stipulation to the controlling facts, vitiate

the need for an evidentiary resolution of the foundational issues of fact confronting the trial court on Buffington's request to compel arbitration.

¶ 25 We therefore reverse the trial court's denial of Buffington's motion seeking arbitration. To resolve ambiguities in the arbitration provisions arising from the lack of a designated architect for the project and other fact issues raised by Ameristar,[4] we remand the case to the trial court with instructions to conduct an evidentiary hearing to decide those questions of fact by which the existence or non-existence of a valid, enforceable agreement to arbitrate will be determined, including the parties' intent as to the applicability of the contract's mandatory arbitration provisions in the absence of an architect.

### CONCLUSION

¶ 26 The trial court's orders refusing to compel arbitration fail to resolve crucial disputed issues of fact pertaining directly to the legal questions of whether there is a valid, enforceable agreement to arbitrate and whether the parties are bound to such an agreement. The orders are reversed and the case is remanded for the trial court's reconsideration of the motion to compel arbitration after its resolution of these contested issues of fact.

¶ 27 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, V.C.J., and RAPP, J. (sitting by designation), concur.

4. Ameristar asserts in its response to Buffington's motion that the contract and its arbitration clause were procured by fraud on the part of Buffington. A claim for "fraud in the inducement of a contract requiring arbitration must be resolved by the [trial] court prior to compelling arbitration." *Hai, M.D. v. Baptist Healthcare of Oklahoma, Inc.*, 2010 OK CIV APP 3, ¶ 18, 230 P.3d 914, 919 (citing *Shaffer v. Jeffery*, 1996 OK 47, ¶ 26, 915 P.2d 910, 917–18). This Court in *Hai* concluded that a claim for fraudulent inducement "is an issue properly addressed at the evidentiary hearing." *Id.* at ¶ 20, 230 P.3d at 919–20.